CATHARINE DEMPSEY, Administratrix of BRIDGET DEMPSEY *vs.* J. MARTIN MCNABB, Executor of MILES CROW.

*Statute of Limitations—Action for Money had and Received—Doctrine of Relation as Applicable to an Administratrix.*

If a claim against the estate of a testator is founded simply on an implied obligation to pay for services rendered the testator in his life-time, that obligation accrued as the services were performed, and became an existing debt payable *in præsenti*, and therefore due in the life-time of the person by whom they were rendered; and consequently the Statute of Limitations commenced to run against such claim from the time the right of action accrued.

When the Statute of Limitations once begins to run no subsequent circumstances will arrest its operation; but it does not begin to operate until there is a person *in esse*, competent to sue after the action accrues.

Where a person who was not the personal representative of an intestate, assumed after her death to collect moneys belonging to her estate, an administratrix afterwards appointed has the right to affirm or disaffirm such act, and by affirming it to treat the party as receiving the money to the use of the administratrix.

The principal of relation applies in such a case, and the title of the administratrix though it does not exist until the grant of letters of administration, related back to the time of the death of the intestate, and upon the affirmance of the act, the administratrix is entitled to sue for the money so collected, as money had and received to her use.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

Dempsey, Adm'x *vs.* McNally, Ex'r.

*Exception.*—At the trial the plaintiff offered the five following prayers:

1. That the Statute of Limitations pleaded by the defendant in this cause, does not begin to run until the granting of letters of administration to the plaintiff upon the estate of Bridget Dempsey.

2. That under the fourth count in the declaration, the verdict of the jury must be for the plaintiff for the amount of money as appears by the bond and receipt of defendant's testator, as given in evidence, that said Crow in his life-time received from the Darlington Mutual Building Association No. 3, together with interest from the date it was so received, in their discretion.

3. That in addition to the sum of money which the jury find, if any, for the plaintiff, under the second prayer offered by plaintiff, they can find such further sum of money as the work and services which Bridget Dempsey, in her life-time, rendered and performed for Miles Crow in his life-time, were reasonably worth from the evidence; provided they find that said Bridget performed valuable services with the expectation of any reward, and the burden of proof is on the defendant to show they were rendered without such expectation of reward.

4. That if the jury believe from the evidence that Bridget Dempsey in her life-time worked and labored for defendant's testator in his life-time, then their verdict must be for the plaintiff for such sum of money as they may find from the evidence such services were reasonably worth, for a period not exceeding three years prior to the death of said Bridget Dempsey; provided they find from the evidence said services were rendered with an expectation upon the part of said Miles Crow to pay for the same.

5. That there is no evidence in this cause to sustain the third plea of defendant to the declaration of plaintiff,

and on the issue joined thereon the verdict of the jury must be for the plaintiff.

The defendant offered two prayers as follows:

1. If the jury find that the causes of action mentioned in the first, second, third, and fifth counts of the declaration accrued before the death of Bridget Dempsey, plaintiff's intestate; and further, that said Bridget died on the 8th day of August, 1885, and that this suit was instituted on the 1st day of September, 1888, then the verdict must be for the defendant upon the issues joined on the first and second replications to the fourth plea, unless the jury believe that Miles Crow in his life-time, or his executor since his death, promised to pay the debts sued for in said counts, and there is no legally sufficient evidence of any such promises.

6. If the jury believe that the defendant's testator, not being the personal representative of Bridget Dempsey, if the jury so find, assumed after her death to collect moneys belonging to her estate, still he cannot be charged for the same in this form of action and under the pleadings in this case.

The plaintiff specially objected to the granting of the sixth prayer of the defendant, because there was no evidence to support it, and also generally objected to the granting of the first and sixth prayers of the defendant.

The Court (STUMP, J.,) overruled said special objections of the plaintiff, and rejected all the prayers of the plaintiff, and granted the first and sixth prayers of the defendant, and rejected his other prayers. The plaintiff excepted, and the verdict and judgment being against her, appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John S. Young*, and *James J. Archer*, for the appellant.

*Albert Constable,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought by the appellant, as administratrix of her sister, Bridget Dempsey, deceased, against the appellee, executor of Miles Crow, deceased, for wages, alleged to have been due the appellant's intestate at the time of her death; and for money, alleged to have been received by Miles Crow after the death of the plaintiff's intestate, as the proceeds of certain stock in a building association, belonging to the intestate at the time of her death.

The declaration contains five counts; but only the second and fourth counts state the causes of action upon which recovery is sought. The second count is for work and labor performed by the plaintiff's intestate; and the fourth count is for money had and received by Miles Crow in his life-time, for the use of the plaintiff as administratrix of Bridget Dempsey, deceased.

The defendant pleaded seven pleas. The first and second of which were, that neither the decedent, Miles Crow, nor the defendant, as his executor, was indebted as alleged, nor did either of them promise as alleged. Third, that Miles Crow, in his life-time, paid and discharged the plaintiff's claim to Bridget Dempsey in her life-time. Fourth, that the alleged causes of action did not, nor did either of them, accrue within three years before suit brought. Fifth and sixth, set-off; and seventh, that after the death of Bridget Dempsey, Miles Crow, in his life-time, paid her funeral expenses, doctor's bills, *and other just debts to an amount greater than plaintiff's claim.* A bill of particulars was filed with the pleas, whereby the estate of Bridget Dempsey is charged with money paid for coffin, and for serving funeral, $80, and for money paid for medical attendance on the deceased, $154. Issues were taken on the pleas, and trial thereof

resulted in verdict and judgment for the defendant, and the plaintiff has appealed.

It appears that Bridget Dempsey, the plaintiff's intestate, went to live with her cousin, Miles Crow, in the year 1866, and remained a member of his family until she died, on the 8th of August, 1885. During the time that she so lived with her cousin she performed valuable services for him, in cooking and taking care of his household affairs; but was always treated as a member of his family. That, in the winter of 1884-5, she was very delicate, and from April to the time of her death she was in bed, unable to do any service, but had to be taken care of. It also appears that, on the 29th of September, 1885, after the death of the plaintiff's intestate, Miles Crow, without administration, but simply professing to act as the next friend of his deceased cousin, and "on behalf of any heirs" she might have, received of the Darlington Mutual Building Association, the sum of $141.58, the value of two shares of stock held in that association by the deceased at the time of her death. This is the sum of money sought to be recovered under the fourth count of the declaration.

Miles Crow died in the year 1887, leaving a will, and the defendant qualified as his executor. The plaintiff, the sister of Bridget Dempsey, deceased, obtained letters of administration upon the estate of her intestate, in the year, 1888, and, on the 1st of September, 1888, this suit was brought.

There is no evidence in the case to indicate in the slightest degree the terms upon which Bridget Dempsey rendered service to Miles Crow. Whether there was a yearly, monthly, or weekly hiring, or an indefinite hiring terminable at the will of either party, or any hiring at all, does not appear. It is simply stated that she lived in the family and rendered valuable services, until she was taken sick and became unable to work, some months

Dempsey, Adm'x *vs.* McNally, Ex'r.

before her death. If the claim for services·be founded simply upon an implied obligation to pay for services rendered, that obligation accrued as the services were performed, and became an existing debt payable *in præsenti*, and therefore due in the life-time of the plaintiff's intestate; and consequently the Statute of Limitations commenced to run against such claim from the time the right of action accrued. And that being so, the principle is well settled, that when the Statute of Limitations once begins to run, no subsequent circumstances will arrest its operation; but it does not begin to operate until there is a person *in esse* competent to sue after the right of action accrues. *Ruff's Adm'r d. b. n. vs. Bull*, 7 *H. & J.*, 14; *Haslett's Adm'r d. b. n. vs. Glenn, Ib.*, 17; *Rockwell vs. Young*, 60 *Md.*, 563. Here, so far as the claim for services is involved, the Statute of Limitations commenced to run in the life-time of the plaintiff's intestate, and became a complete bar before suit brought; and as there is nothing in the evidence to remove the bar, there was no error committed by the Court below in rejecting the first, third, fourth and fifth of the plaintiff's prayers, for the reason that they sought to exclude or ignored the bar of the Statute. Nor was there any error in granting the first prayer of the defendant; but we think there was error committed in refusing to grant the second prayer of the plaintiff, and in granting the sixth prayer of the defendant. These latter prayers had reference to the money received by the defendant's testator from the building association, sometime after the death of the plaintiff's intestate; and by the Court's ruling on these prayers the plaintiff was denied the right to recover in this action the money so received. By the sixth prayer of the defendant the jury were instructed that if they believed that the defendant's testator, not being the personal representative of Bridget Dempsey, assumed, *after her death*, to collect moneys be-

longing to her estate, still he cannot be charged for the same in this form of action, and under the pleadings in this case. And upon this instruction the verdict was rendered for the defendant.

Now, we do not perceive the difficulty that is supposed to exist to the right of the plaintiff to recover in this action. As we have already noticed, the money was received by the defendant's testator, not under any claim of right in himself, but for those who might be entitled to it; and though there was no personal representative of the deceased in existence at the time when the money was received, yet, when afterwards administration was granted, the administratrix had the right to affirm or disaffirm the act of the defendant's testator; and, by affirming the act, to treat the party as receiving the money to the use of the administratrix. The doctrine of relation is old and familiar; and while its most frequent application occurs in cases where conversion has been made of, or injury done to, the goods of decedents after their death and before administration upon their estates, there is no substantial reason why the principle should not apply in a case like the present. The principle is founded in the necessity of the case, as a means of effectuating justice; and if not applied in a case like this, great injury and wrong might be done in many cases.

In *Com. Dig., tit. Administration,* (*B.* 10,) the doctrine is thus stated: "An executor or administrator has the property of the goods of his testator or intestate vested in him *before his actual possession,* and therefore may have trover, trespass, &c., against him who takes them before he has actual possession of them." "So, though the administration be not granted for a long time, yet, when it is granted, it vests the property in the administrator by relation from the time of the death of the intestate." And the principle thus stated is not confined to

cases of mere tort, but has been extended to cases where the circumstances may give rise to implied contracts.

In *Foster vs. Bates*, 12 *M. & W.*, 226, a principal sent goods to a foreign agent for sale, and died intestate; and after his death the defendants purchased the goods from the agent, who sold them for the benefit of the intestate's estate. Subsequently to the sale, the plaintiff took out letters of administration upon the estate, and then sued the defendants for the price of the goods; and it was held that the action was maintainable; that the title of the administrator, though it did not exist until the grant of letters of administration, *related back to the time of the death of the intestate*, so as to entitle the administrator to sue in assumpsit for goods sold and delivered; and that, as the act of the agent was ratified by the plaintiff after he became administrator, it was no objection that the intended principal was unknown at the time of the sale by the party who assumed to act as agent. In that case the same objection was taken to the right to recover that has been taken in this; but the Court of Exchequer, upon full consideration, held the action maintainable. And PARKE, B., in delivering the considered judgment for the whole Court, said: "The relation being established for the benefit of the intestate's estate, against a wrong-doer, we do not see why it should not be equally available to enable the administrator to obtain the benefit of a contract intermediately made by suing the contracting party; and cases might be put in which the right to sue on the contract would be more beneficial to the estate than the right to recover the value of the goods themselves. In the present case, there is no occasion to have recourse to the doctrine, that one may waive a tort and recover on a contract; for here the sale was made by a person who intended to act as agent for the person, whoever he might happen to be, who legally represented the intestate's estate; and it was

ratified by the plaintiff, after he became administrator; and, when one means to act as agent for another, a subsequent ratification by the other is always equivalent to a prior command; nor is it any objection that the intended principal was unknown, at the time, to the person who intended to be the agent, the case of *Hull vs. Pickersgill*, 1 *Bro. & B.*, 282, being an authority for that position." And so in the case, still more comprehensive, of *Welchman vs. Sturgis*, 13 *Q. B.*, 552, where the defendant had, after the death of the plaintiff's intestate and before the taking out of letters of administration by the plaintiff, applied, in payment of funeral and other expenses, the cash that was in the house of the intestate at the time of his death, as well as divers sums of money arising from the sale of his effects, and also certain cash payments made to the defendant after the intestate's death, but before administration taken upon his estate, by parties indebted to him, it was held, in an action of *indebitatus assumpsit*, that the plaintiff, as administratrix, could recover such sums of money of the defendant, as money had and received to her use as administratrix; the letters of administration relating back, for that purpose, to the death of the intestate. And PATTESON, J., in the course of his opinion, said: "With respect to the money due to the intestate, and received by the defendant, it is true that no privity existed between her and the plaintiff; but, as such money is due to the administratrix by relation, she may affirm the receiving, and sue for the money as had and received to her use."

The reason of these decisions appear to us to be sound, and we have no hesitation in adopting them; and as the principles of those cases cover the only material questions presented by the second prayer of the plaintiff and the sixth prayer of the defendant, the ruling upon which we

regard as erroneous, we must reverse the judgment and award a new trial.

*Judgment reversed, and
new trial awarded.*

(Decided 20th February, 1891.)