J. W. JONES, Administrator of J. J. JONES, et al. v. THOS.
J. JONES.

*Administrators—Mistake—Cancellation of Note Due the
Estate—Executor de Son Tort—Ratification—Devastavit.*

1. An administrator, by relation, may ratify and make valid any
act of his before qualification that he might have done in the
course of his administration after his qualification.

2. Where some of the children of an intestate, in ignorance of the
law respecting a certain conveyance of land to a son of intes-
tate as an advancement, agreed that the administrator there-
after to be appointed should cancel the greater part of a note
given by the son to the decedent for borrowed money in order
to equalize the advancements in personalty, and the son
afterwards disclaimed any share in the estate and kept the
land for which he did not account; *Held,* that the adminis-
trator (who as one of the heirs of decedent had been a party
to the agreement) could not, after his qualification, maintain
an action to recover the amount of the cancelled note on the
ground of a mistake. (CLARK, J., dissents.)

3. In such case, the administrator, having cancelled the note, is
liable for a *devastavit* to such of the distributees as did not
assent to the cancellation of the debt.

CIVIL ACTION, heard before *Starbuck, J.,* at January
Special Term, 1896, of PERSON Superior Court.    The mate-
rial facts, as found by his Honor below, are stated in the
opinion of Associate Justice FURCHES.    His Honor, upon
the facts, found the following as conclusions of law :

" 1. That the agreement entered into by G. W. Jones as
a distributee and G. B. Williams as attempting to repre-
sent his children at the meeting referred to does not estop
them from maintaining this action as administrators.

" 2. Nor are they estopped by having accepted as admin-
istrators the $107 note and the payment thereof.

" 3. That the misconception of the law relating to the

advancements under which the plaintiffs, G. W. Jones, R. J. Jones, W. P. Jones and J. W. Jones, rested at the time they agreed to release and did release the defendant from the payment of the $600 note does not entitle them to have the release declared void.

"4. That as to them said release is binding.

"5. That as to the plaintiffs, Annie Edwards, Lucy Williams, Roby B. Williams and Bernard B. Williams, the said release is of no effect.

"6. That an account of the administration of the estate and the advancements received by the distributees should be ordered.

"7. That in this accounting the defendant, Thos. J. Jones, and the plaintiff, G. W. Jones, should be charged with the valuation placed upon the lands advanced to them by the intestate and expressed in the deed, viz.: $1,500 and $800, respectively.

"8. That the other plaintiffs should be charged with the average value of the shares allotted to them as valued by the commissioners, viz.: $882.02 in the special proceeding to which all the parties to this action were parties.

"9. That the plaintiffs, Robt. J. Jones, G. W. Jones, W. P. Jones and J. W. Jones, are not entitled to any share in the note sued upon for any purpose, having released all their interest therein.

"10. That in the other personal estate all the parties to this action should be allowed such shares as they may be found entitled to according to the rules of distribution after being charged with the amounts in real or personal estate advanced to them by the intestate or received by them from the estate.

"11. That the proceeds of the note sued upon should be distributed between the defendant and the plaintiffs, Annie Edwards, Lucy Williams, Roby B. Williams and Bernard

B. Williams, according to the rules of distribution, after accounting for all advancements and sums received by them in realty or personalty.

" 12. That such sums as the said Annie Edwards, Lucy, Roby B. and Bernard B. Williams, the last three being together entitled to one whole share in the division of the estate, shall be found entitled to should be paid them out of the proceeds of the bond and the residue of the personal estate in proportionate parts.

" 13. That such parts of the proceeds of the said bond as the other plaintiffs would have been entitled to if they had not released the defendant should be allowed to the defendant.

" It is adjudged that the plaintiffs, J.W. Jones and G. B. Williams, as administrators of J. J. Jones, deceased, recover of the defendant Thos. J. Jones the sum of five hundred and eighty-two dollars and fifty cents, ($582.50,) with interest on the sum of $500 from this term, and the cost of the action up to and including this Term, to be taxed by the clerk.

" It is further adjudged and ordered that D.W. Bradsher be and is hereby appointed a referee to take an account of the administration of the estate of J. J. Jones, deceased, by the said administrators, and also of all advancements made to and all sums received from the estate of the parties to this action or those in whose places they stand before and after letters of administration were granted.

" The referee in taking the account is to conform to the opinion of the court as expressed in its conclusions of law filed in this cause, and is to make his report to the next term of this court. And the cause is retained for further orders."

From this judgment both parties appealed.

*Messrs. Boone, Merritt & Bryant,* for plaintiffs.

*Messrs. Graham & Graham* and *A. L. Brooks,* for·
defendant.

*In Defendant's Appeal.*

FURCHES, J.:    J. J. Jones died intestate in the county·
of PERSON, leaving him surviving five children, and grand-
children by two deceased daughters, his heirs-at-law and,
next of kin.    Before his death the intestate had
advanced a part of his children in money and personal
property—three of them to the amount of $500, and oth-
ers in smaller amounts, and some of them nothing.    He·
had advanced George in land to the value of eight hun-
dred dollars, and the defendant, Thomas J., in land to the·
value of fifteen hundred dollars.    The deed to Thomas.
expressly stated that it was intended as an advancement,.
and was valued in the deed at fifteen hundred dollars, andi
this deed had been duly probated and registered for more·
than a year before the death of the intestate.    The defend--
ant, Thomas, had also borrowed six hundred dollars of the·
intestate not long before his death, for which he executed.
his note.    A few days after the death of the intestate,.
the children, all of whom it seems were 21 years of·
age, met at the homestead to consult about the estate and
to determine who should administer on the same.    The·
infant children of the two deceased daughters were not
present, and though the father of one set and the uncle of·
the other professed to represent them, they had no author-
ity to do so

At this meeting, the different children made statements
as to the amount each had been advanced in personalty.
And as three of them had been advanced to the amount of
five hundred dollars, and as it was supposed the personal
estate would be sufficient to make them all equal to that

amount and more, it was agreed that the defendant Thomas
should execute a note to the administrator, when appointed,
for the difference between five hundred dollars and the
face value of the six hundred dollar note, and that said
note should be given up to him or destroyed. This was to
make him equal in the personal estate with those who had
been advanced to that amount, and to which amount all
were to be made equal before any further distribution
should be made.

When this was done, it seems that the other children of
the intestate, except the defendant, did not have *actual*
notice of the provisions of their father's deed to Thomas.
And they were of the opinion that Thomas would have to
account for his land, at its value, upon a partition of the
lands of the intestate. But when they came to divide the
lands, Thomas by that time, if he had not before, had
found out that, if he made no claim for any part of his
father's estate, his advancements could not be brought
into hotch-pot, and he filed a disclaimer, and the other
lands, including that advanced to George, were divided
among the other children, except the defendant Thomas,
and were valued at $882 per lot.

After Thomas refused to allow his advancements to be
brought in, and claimed nothing further from the estate,
the administrators, J. W. Jones and Green B. Williams,
bring this action to recover from Thomas the balance of
the six hundred dollar note he owed to their intestate at
the time of his death. And by order of the court all the
distributees were made parties, and joined the plaintiffs in
prosecuting this action. Defendant answered and said
that it was agreed at a meeting of all the parties interested,
a few days after the death of the intestate, that, inasmuch
as he had received no personal advancement from his
father, he should have five hundred dollars out of this

six hundred dollar note, to make him equal with the others ; that he should give a note to the administrators, when appointed (it being agreed that day that Jones and Williams should administer) for the difference between five hundred dollars and his note; that on the next day they did administer, and he gave them his note for one hundred and seven dollars, (being the difference between five hundred dollars and the six hundred dollar note and interest,) and by consent of all parties his note of six hundred dollars was surrendered and destroyed. He further says that he " stands on his own rights in this case, as he did in the proceeding for partition," and says that it is an attempt " to set up an unjust claim, not creditable to the parties concerned, and in violation of the rights of this defendant." This paragraph of his answer, under the circumstances and facts of the case, we think might have well been omitted. But a jury trial was waived and the judge finds the facts as to the six hundred dollar note, the agreement of the parties, the appointment of the plaintiffs, Jones and Williams, administrators, and that defendant, after their appointment, gave them his note for one hundred and seven dollars, and they surrendered or destroyed the six hundred dollar note, and soon after the defendant paid the one hundred and seven dollar note.

Upon these findings the court held that plaintiffs were entitled to recover five hundred dollars and interest thereon from the date of the six hundred dollar note, and that defendant must account for the excess in the value of his land.

There may be some natural justice in this ruling, but it is not the law. It was admitted on the argument by counsel for plaintiffs, that it was erroneous as to the land, while it was contended that it was correct as to the collection of the five hundred dollars and interest.

JONES *v.* JONES.

This agreement and arrangement was made, that defend-ant should only pay the excess over five hundred dollars on the six hundred dollar note, by all the parties interested in the estate (there being no debts) the day before the administrators were appointed and qualified. And the administrators after their appointment and qualification, in taking the one hundred and seven dollar note and after-wards receiving payment of this note, were acting in accord-ance with this agreement. But this does not excuse them for any act they did in regard to the estate before they qualified. When an administrator is appointed and qual-ifies, his rights as such relate back to the death of the intestate. Schouler on Ex., Sec. 238. An administrator, by relation, may ratify and make valid any act of his before qualification that he might have done in the course of his administration after he had qualified. Schouler, Section 195. "One who assumes to act in behalf of the estate of a deceased person, in compromising debts due to it, before the appointment of an administrator, will, if subsequently appointed administrator, be bound by his acts to the same extent as if he had received his appointment at the time of doing the same." *Alvord* v. *Marsh*, 12 Allen, (Mass.,) 603. To the same effect is *Taylor* v. *Phillips*, 30 Vt., (1 Shaw,) 238.

In the case of *Alvord* v. *Marsh*, *supra*, it is held that where the plaintiff, before her appointment, settled with the defendant a claim due intestate's estate, in which she allowed claims not due by the intestate, but gave a receipt in full, and afterwards qualified as administratrix, she could not then collect what would have been due, but for the settlement; that when she qualified her administra-tion related back to the death of the intestate and vali-dated this settlement.

These authorities go to show that the acts of parties

before their appointment, if they are such acts as might have been done in the course of administration, will be ratified if they are afterwards appointed. But from the findings of fact in this case, we do not know that they necessarily involve the doctrine of ratification by relation back as it appears that the one hundred and seven dollar note was given and paid to the administrators after their appointment, and we suppose the six hundred . dollar note was then surrendered or destroyed. But as this does not clearly appear, we discuss the doctrine of relation. And whether it was surrendered the day before they were appointed or not, it was clearly intended as a payment to Thomas as that much on his distributive share of his father's estate. It was in effect the same as if the defendant had paid off the six hundred dollar note, and the administrators had paid him back five hundred dollars out of the same money. But it is claimed that this was done through mistake. And so we think. But a mistake of what? All the facts were known. Defendants's deed had been registered for more than a year in Person county, and defendant was living on the land. This was legal notice of that fact, and all the other facts were known to all the parties. This seems to be admitted by the parties in their argument. But plaintiffs contend that it was a mistake of law, in not understanding the law of advancements. This seems to be true: That this payment (for we must treat it as such) was made under a mistake of law. And it seems to be settled in this State that a party cannot recover back money paid under a mistake of the law. *Newell* v. *March*, 8 Ired., 441; *Adams* v. *Reeves*, 68 N. C., 134; *Lyle* v. *Siler*, 103 N. C., 261; *Com'rs* v. *Com'rs*, 75 N. C., 240. The administrators having failed to collect, and in effect by this transaction have wrongfully paid

the defendant five hundred dollars on his distributive share of the intestate's estate, through mistake of law, and not being able to recover it back, have committed a *devastavit*, for which they are liable.

It is suggested by a member of the Court that it was a compromise of the six hundred dollar note, and plaintiff cannot recover on account of Section 574 of *The Code.* This is true if it was a compromise of the claim. But we see no element of compromise in the transaction. There was no talk of a compromise, and there was nothing to compromise. The note was admitted to be due—every dollar of it—and there is no suggestion in the pleadings or otherwise that defendant was not solvent. But, as it was committed by and with the advice of all parties interested, except the two sets of minors, who could not participate or consent to this wrongful act of the administrator, none of them will be allowed to recover against the administrators, except the infants. While in law the others might be allowed to recover their aliquot parts against the administrators, it would be unconscionable and inequitable for them to do so. And a court of equity would have enjoined them from so doing before the junction of jurisdictions, but now it will not aid them to recover. Therefore, in settling the estate of the intestate, the administrators should be charged with this five hundred dollars and interest. But each one of the four adults who participated in this agreement and arrangement to give Thomas five hundred dollars out of six hundred dollar note, should be charged with his *aliquot* part—this being one sixth each—as Thomas claims no part of the estate. This will be making them liable for one-third of the five hundred dollars and interest, whereas they have collected only one hundred and seven dollars. For the reasons assigned there is

error.    Plaintiffs cannot sustain this action, and the judgment appealed from is reversed.

REVERSED.

*In Plaintiff's Appeal:*

FURCHES, J. :    This appeal has been disposed of by what is said in the opinion in defendant's appeal.    Judgment for defendant.