(8 App. Div. 387)

BENNETT v. LYNDON.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

EXECUTORS AND ADMINISTRATORS—WHEN APPOINTMENT RELATES BACK.

A widow of a decedent who makes an agreement for the settlement of a claim against the estate, and is afterwards appointed administratrix, cannot sue to set aside such agreement, as her appointment as administratrix relates back to the time of the agreement.

Appeal from judgment on report of referee.

Action by Louisa Bennett, as administratrix of William P. Bennett, deceased, against Julia G. Lyndon, personally and as executrix of Francis Lyndon, deceased. The complaint was dismissed, with costs, and plaintiff appeals. Affirmed.

On the 26th of March, 1894, William P. Bennett entered into a written lease with the defendant, as executrix of Francis Lyndon, for certain premises situated in the town of Macedon, for the term of one year from the 1st of April, 1894, agreeing to pay a yearly rent of $225. In that lease was a clause which gave the landlord a lien in the following language: "The said party of the first part shall have a lien as security for the payment of the rent aforesaid upon all the goods, wares, chattels, implements, fixtures, tools, and other personal property which are or may be put on the said demised premises, and such lien may be enforced on the nonpayment of any rent aforesaid, by taking and selling such property in the same manner as in case of chattel mortgage on default; such sale to be made upon six days' notice, by posting the same in some public place on the premises, and serving it upon the party of the second part, personally or by mail, directed to him at Macedon, N. Y." The schedule attached to that instrument, covering a portion of the property thus mortgaged, contained the following language: "All of the crops which are sowed or planted, of every name or nature, and all hay cut from said place, all fruit of every name grown upon said premises during said term." Bennett went into possession of the property under the lease, and continued in possession until the 26th day of June, 1894, when he died intestate. Louisa Bennett, at the time of his death, resided on another farm several miles from her husband, William

P. Bennett. And it is found by the referee "that on or about the 6th day of July, 1894, the said Louisa Bennett and said defendant entered into an agreement by which said Louisa Bennett did surrender and deliver unto said defendant said demised and leased premises, and all crops then growing thereon, and by which, in consideration of the payment to the defendant by said Louisa Bennett of the sum of fifty dollars ($50.00) on or about the first day of December, 1894, and the said surrender by said plaintiff as aforesaid, said defendant released the personal property hereinbefore described in finding of fact No. 6 from the lien of said chattel mortgage"; also, "that therefore, and in pursuance of said agreement, said defendant entered upon said demised premises, and occupied the same during the term of said lease, and caused said demised premises to be cultivated, and the crops raised thereon to be marketed, for her benefit"; also, "that in entering into said agreement with said Louisa Bennett, on said 6th day of July, 1894, and in taking possession of said demised premises, as aforesaid, said defendant did not practice any deceit or fraud, or make any false or fraudulent representations to the plaintiff, in any way whatsoever." It was also found by the referee "that on the 21st day of December, 1894, the plaintiff sold at public auction the personal property mentioned and described in finding of fact No. 6." In finding of fact No. 6 it is found, viz.: "That said William P. Bennett removed and put upon said demised premises one horse, a lumber wagon, one democrat wagon, one top buggy, two open buggies, one pair of bob sleds, one cutter, one fanning mill, one reaper, one mower, one work bench, one set of carpenters' tools, one set of double heavy harness, one set light single harness, three plows, and other agricultural implements and household furniture." It was also found, viz.: "That thereupon, and on the 6th day of July, 1894, the defendant had a good and subsisting lien upon the personal property described in finding of fact No. 6, under and by virtue of said indenture of lease."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Henry M. Field, for appellant.
D. W. Forsyth, for respondent.

HARDIN, P. J. Plaintiff brings this action on the equity side of the court, and seeks to set aside an arrangement made on the 6th day of July, 1894, by her, with the defendant. Plaintiff's letters of administration were not issued until the 25th day of July, 1894. The evidence given at the hearing indicates that a settlement and adjustment were made, without any fraud or deceit, as found by the referee; and the evidence satisfactorily supports the findings of fact made by the referee in respect to the adjustment made. Carey v. Smith, 5 App. Div. 505, 38 N. Y. Supp. 1079.

In Vroom v. Van Horne, 10 Paige, 557, it appeared that a bill was filed by the same person who afterwards obtained administration to avoid her own deliberate act, and the chancellor observed in respect thereto:

"This, I think, a court of equity ought not to permit her to do, even if that act was unauthorized. * * * The grant of administration has relation to the death of the intestate, and it legalizes all intermediate acts of the administrator. Thus, where the administrator, before he had taken out letters of administration upon the estate of the intestate, delivered a horse to another for his expenses in burying the decedent, and afterwards brought trover for the horse, it was decided by a majority of the judges of the court of king's bench that the action could not be maintained; for, say they, it is directly against his own agreement and contract, and the plaintiff himself is a particeps criminis if anything is done amiss; and it is not reasonable that he should be allowed to bring his action against the

defendant for doing a thing to which he not only consented, but jointly acted therein with the defendant."

In Priest v. Watkins, 2 Hill, 225, a note belonging to the estate of the intestate was paid·to his widow. She subsequently united with another in taking out letters of administration, and they then brought an action upon the note in their representative capacity, and it was held "that, notwithstanding the provisions of the Revised Statutes as to executors de son tort, the letters related back to the time of the intestate's death, and therefore the payment to the widow was a bar to the action."

Upon the facts and circumstances disclosed in this case, we think a court of equity ought not to allow the plaintiff to overhaul the settlement which she deliberately made, without any fraud, with the defendant. Besides, it appeared upon the trial that there was an equitable adjustment made between the parties, and that the defendant has, by means of the settlement, obtained no more than was equitably her due from the intestate, and by reason of the terms of the lease, and that the defendant surrendered such lien or rights as she had to enforce the collection and payment of the rent reserved in the lease. The findings of fact made by the referee, as already intimated, are warranted by the evidence delivered before him. We have looked at the rulings criticised by the appellant, and do not find that any error was committed by the referee which requires us to interfere with the conclusion which he reached upon the hearing. We think the referee's report should be sustained.

Judgment affirmed, with costs. All concur.