## COMPENSATION FOR THE SETTLEMENT OF THE ESTATE OF A DECEDENT.

Probate Court of Columbiana County.

IN THE MATTER OF THE ESTATE OF ROBERT R. POLLOCK, DECEASED.

Decided, May 15, 1915.

*Estates—Letters of Administration Relate Back to Death of Decedent, When—For What Purpose—Extra Compensation.*

1. Where one of the next of kin and an heir at law by agreement or with the knowledge and consent of the other next of kin and heirs at law undertakes to settle and adjust the affairs of the estate of a decedent and by reason of such arrangement collects assets and pays valid debts of such estate and is later duly appointed to administer thereon, the letters of administration so issued relate back to the death of the decedent and thereby legitimate all transactions made under and by virtue of such arrangement; and such subsequent appointee may claim and be allowed the statutory per centum upon all assets so collected and disbursed and for such purpose letters of administration likewise relate back to the death of the decedent.

2. Executors or administrators *de son tort* are no longer recognized in Ohio.

3. Where an administratrix brings suit to sell the real estate of the decedent and such action is contested by one of the heirs at law, such administratrix is entitled to extra compensation for her time and expenses in attendance upon such suit, because such services are not in the common course of duty. She is likewise entitled to railroad fare and hotel bills under Section 10837, General Code, while traveling about in the discharge of the ordinary duties relating to the estate, and also to telephone tolls and postage. She is not entitled to *per diem* and allowance for expenses when traveling about the community where the estate is situated, in the discharge of her ordinary duties and where no expense is incurred. Such services are in the common course of her duty and for which the statutory per centum is intended to compensate.

*Lodge Riddle,* for exceptor.
*J. F. Spence,* for administratrix.

FARR, J. (orally).

On the 12th day of April, 1915, Laura V. Pollock, as administratrix of the estate of Robert R. Pollock, deceased, filed her first account in this court, and on the 26th day of April following, Olive S. Summers, one of the heirs at law of said decedent, filed exceptions to said account, which were duly heard. By agreement of the parties, all except two of said exceptions were settled.

The first of those remaining is to the statutory per centum claimed by said administratrix on the sum of $363.24 collected and disbursed by her prior to her appointment, which was made August 5th, 1913. Said disbursements are as follows:

"1913.

| | | |
|---|---|---:|
| March | I. C. Bean, feed | $1.14 |
| April 8, | Ed. Chandler, wages for feeding | 18.00 |
| June 12, | Taxes | 18.48 |
| June 13, | Dr. T. A. Burneson | 71.45 |
| June 24, | C. G. Speidel | 211.50 |
| July 10, | Interest on note | 35.00 |
| July 26, | Interest on note | 7.67 |
| | Total | $363.24" |

The evidence discloses that at a family meeting held soon after decedent's death, at which the exceptor was present, it was agreed that Laura V. Pollock should, as the representative of the other members of the family, settle the affairs of the estate without formal administration. Such must have been the arrangement because she proceeded so to do, made some collections and paid the foregoing debts and claims against the estate, and it was not disclosed that there was any objection from any legitimate source. She was not acting as administratrix *de son tort* (which is no longer recognized in this jurisdiction, 5 O. 533; 15 O., 517), because there was an agreement and consent of the parties in interest. She was not a stranger, but there by right, by virtue of her own interest and with the assent and knowledge of the other heirs at law. However, either because of some discord or for some other reason, Miss Pollock, on the

above date, made application and was duly appointed administratrix of her father's estate.

Is said administratrix entitled to such statutory per centum? Section 10837, General Code, provides as follows:

"Executors and administrators may be allowed commissions upon the amount of personal estate collected and accounted for by them, and of the proceeds of real estate sold by order of court to pay debts, or under directions of the will, which must be received in full compensation for all their ordinary services, as follows: for the first thousand dollars, at the rate of six per cent.; all above that sum, and not exceeding five thousand dollars, at the rate of four per cent., and all above five thousand dollars, at the rate of two per cent."

It will be observed that the above section provides that they may be allowed commissions "upon the amount of personal estate collected and accounted for by them." It is not provided that the foregoing applies only to funds administered in a trust capacity, but such is a fair inference. It is personal estate "collected and accounted for." Mr. Rockel discusses this question at Section 63 in which he observes as follows:

"For general purposes it may be said the letters of administration relate back to the time of the death of the intestate and vest the property in the administrator from that time. On this principle an administrator may maintain trespass for injuries to the goods of the intestate committed after his death and before the appointment; or maintain an action on a contract made with the defendant before appointment; or for money belonging to the estate collected by defendant before grant of letters; and on the same principle the heirs have no power before the appointment of an administrator to bind the personal estate by agreement.

"This doctrine of relation is a fiction of law to prevent injustice and the occurrence of injuries where otherwise there would be no remedy; and would not be applied in case where the rights of innocent parties intervened."

Mr. Woerner likewise observes at star page 385, Section 173, as follows:

"173. *Relation of the Appointment to the Time of the Testator's or Intestate's Death.*—For particular purposes the letters of administration relate back to the time of the death of the intestate, and vest the property in the administrator from that time, attaching to property coming from a foreign jurisdiction as soon as it comes into that of the domicil. On this principle, an administrator may maintain trespass for injuries to the goods of the intestate committed after his death and before the appointment; or trover for property so wrongfully detained; or an action on a contract made with the defendant before appointment; or for money belonging to the estate collected by defendant before grant of letters or assumpsit for money paid to defendant's order. And on the same principle, the heirs have no power, before the appointment of an administrator, to bind the personal estate by any agreement. 'This doctrine of relation is a fiction of law to prevent injustice, and the occurrence of injuries where otherwise there would be no remedy; and would not be applied in cases where the rights of innocent parties intervened;' nor 'to recognize, validate, and bind the estate by the unauthorized acts which have been done to the prejudice of the estate, by any one, while the title was in abeyance.'"

It will be observed that Mr. Rockel practically adopts the text of Mr. Woerner and both are sustained by the following cases: *Archdeacon* v. *Gas Co.,* 76 O. S., 97; *Gerard* v. *Jones,* 78 Ind., 378; *Hutchins* v. *Adams,* 3 Me., 174; *Dempsey* v. *McNabb,* 73 Md., 433; 21 Atl., 378; *Jewett* v. *Smith,* 12 Mass., 309; *Lawrence* v. *Wright,* 40 Mass. (23 Pick.), 128; *Gillkey* v. *Hamilton,* 22 Mich., 283; *Brackett* v. *Hoitt,* 20 N. H., 257; *Allen* v. *Eighmie,* 9 Hun., 201; *Holcomb* v. *Roberts,* 57 Pa. St. (7 P. F. Smith), 493; *Brown* v. *Lewis,* 9 R. D., 497; *Tucker* v. *Whaley,* 11 R. I., 543; *Cook* v. *Cook,* 24 S. C., 204; *Missouri Pac. R. Co.* v. *Bradley* (Neb.), 71 N. W., 283; *Alvord* v. *Marsh,* 12 Allen, 603, 604; *McVaighters* v. *Elder,* 2 Brev., 307, 313; *Miller* v. *Riegne,* 2 Hill (S. C.), 592, 594; *Bullock* v. *Rogers,* 16 Vt., 294, 296; *Jones* v. *Jones,* 118 N. C., 440; *Manvell* v. *Briggs,* 17 Vt., 176, 181; *Hatch* v. *Proctor,* 102 Mass., 351, 353; *Bennet* v. *Lynton,* 8 N. Y. App. Div., 387; 40 N. Y. Supp., 786.

It is therefore well settled by the great weight of authority that for all proper purposes letters of administration relate to the date of the death of the decedent. The reason is obvious. In

a large number of estates at least a small amount of business is
transacted before appointment, sometimes more, sometimes less;
but practically always the funeral expenses are incurred and as
a matter of necessity.  In many instances the care of live stock
must be provided, or suitable provision made for perishable as-
sets.  Must it be held that such debts are not a proper charge
against an estate?  Suppose that in the case at bar, the admin-
istratrix herself had performed such labor or rendered any other
necessary and beneficial service for the estate, would it be con-
tended for a moment that such services were not a legitimate
charge against the estate and payable by an administrator sub-
sequently appointed?  Scarcely so.  In the case at bar the serv-
ices were rendered before appointment, by the agreement, or
at *least* with the knowledge and assent of all parties in interest.
The money was received and disbursed in behalf of the estate
*after* the death of the decedent.  The transactions should ap-
pear in the account because they are a part of the business
of the estate and because the letters of administration so far as
said transactions are concerned relate back to the date of de-
cedent's death.  Must the administratrix even under agreement
or with the knowledge and assent of all parties in interest, ren-
der the service gratis?  It is conceded that Mr. Chandler was
properly paid for feeding the stock; then why not Miss Pollock
for rendering equally beneficial services for the estate?  Sup-
pose the same service had been rendered after her appointment,
would or could statutory compensation be denied?  Scarcely so.
If letters of administration relate back to a decedent's death
in order to legitimate any proper service rendered, then why
not apply the rule to compensation for such services?  It cer-
tainly does so apply; and the same principle that makes such
services lawful and valid in behalf of an estate, carries with it
the equitable right to compensation therefor.  It would be with-
out reason to say that such services were properly and legally
performed but that no compensation could be allowed.  The
language of the statute should be followed. "Executors and
administrators may be allowed commissions upon the amount
of personal estate collected and accounted for by them" whether

before or after appointment because such services are always for the benefit and welfare of the estate.

In fixing compensation for the services rendered in the case at bar, prior to the appointment, no safer guide could be followed than the above statute, according to which the administratrix has requested compensation by way of the statutory per centum. It must be held, therefore, that the appointment relates back to the death of the decedent for the purposes of the transactions above set out; that the administratrix has properly charged herself with the same and is entitled to the statutory compensation thereon and the exception is therefore overruled.

The second and last exception is to the item of $25 claimed by the administratrix for extraordinary services rendered in behalf of said estate. By direction of the court a statement of the various items was filed, and the first is three trips from the family home to Lisbon at $2 per trip to arrange for the sale of real estate. This was in the common course of her duty as administratrix. She was required to sell the real estate for the payment of debts; these trips were incident to the sale, on the proceeds of which she receives her statutory per centum. Mr. Rockel discussing extra compensation at Section 659, observes as follows:

"It is the object and purpose of the statute in fixing the *per centum* to be allowed upon the estate collected and accounted for, in that manner, to compensate the executor or administrator for all the services which are ordinarily required in order to convert the estate into money and distribute the same. This would include the expenses incurred going to and from the probate court for the purpose of getting out letters, filing inventories, sale bills, accounts, and such like matter. It would also include ordinary efforts to collect accounts or notes due the estate, and sell personal propery or real estate if it be required."

The allowance of said item is therefore refused. The second item is for $3 for one day's attendance at the trial of the case in probate court for the sale of real estate. Conducting litigation is not contemplated in the common course of the duty of an executor or administrator, and the litigation instigated con-

cerning the sale of the real estate in the case at bar was by the exceptor and not by the administratrix. Judge Ferris observes, in *Re Estate of Johnston*, 4 N. P., 156, that:

"Where litigation was necessary in the interest of the estate, and the personal attention of the executors was required, extra compensation could be charged by the executors, and the court would allow a proper amount for such services on the principle of *quantum meruit.*"

The foregoing is sustained in principle, in *Re Estate of Wolfe*, 4 N. P., 336, 337; *Chatfield & Woods* v. *Swing & Mellen*, 7 A. L., 326. It follows therefore that the item should be allowed.

The next is three trips from Ashtabula to Lisbon at $3 per trip, "in regard to the settlement of the estate." There is nothing disclosed here that these trips were other than concerning the adjustment of the ordinary affairs of the estate; they are therefore in the common course of duty and the item can not be allowed. The next item is $12 expenses of said three trips. Section 10837, General Code, expressly provides that "further allowance shall be made as the court deems just and reasonable for actual necessary expenses." It was held to the same effect in *Reed* v. *Brown*, 10 C. C., 57, 58 (6 C. D., 154). As a matter of law and of right therefore said item must be allowed, likewise, and for the same reasons the last item of $1 becomes a proper charge.

The administratrix is directed to correct her account in accordance with the foregoing and an entry may be taken accordingly.