### KLINZING v. BLAUW BROS., Inc., et al.

(Supreme Court, Special Term, Monroe County. July 26, 1916.)

*(Syllabus by the Court.)*

1. ACCOUNT ☞14. 20(3)—EQUITABLE ACCOUNTING—LIABILITY.

An action in equity will lie to compel an accounting between parties occupying a fiduciary relation for property converted, including goodwill of a drug business, when the defendants have moved the property from its original to a new location, mingled the stock and fixtures with their own, sold part of it, purchased new stock with the proceeds of the sale, and so confused the remainder that it cannot be identified and separated, and on such an accounting they are liable for the reasonable value of the property at the time of the appropriation, less obligations of the business which they have paid or assumed to pay.

[Ed. Note.—For other cases, see Account, Cent. Dig. §§ 71, 128-131; Dec. Dig. ☞14, 20(3); Equity, Cent. Dig. § 871.]

2. LIENS ☞7—EQUITABLE LIEN.

An equitable lien will be declared by a court of equity to protect the administratrix of the owner of such property, not only upon the property that remains, but upon the entire stock of goods and fixtures in the new store.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 26-28; Dec. Dig. ☞7.]

Action by Emilie Klinzing, as administratrix, against Blauw Bros., Incorporated, and others. Judgment for plaintiff, except as against defendant J. Max Blauw, as to whom the complaint is dismissed.

The plaintiff sues as administratrix of the estate of Louis Klinzing to compel the defendants to account to her for the business conducted by her husband in his lifetime, which she claims they have unlawfully appropriated and are now conducting under the name of Blauw Bros., Incorporated. Her husband was an experienced pharmacist, and conducted a drug store on Clinton Avenue South, in the city of Rochester, and operated in conjunction with it an independent enterprise in the sale of essence for the manufacture of catsup. The drug business had not prospered, and on June 28, 1910, an agreement was made between his largest creditors, his daughter Mathilde, and himself, whereby his daughter was to conduct the business as trustee, and out of the proceeds

of the business pay the creditors mentioned and make certain allowances to his wife and himself. The agreement was to continue until all of the indebtedness which existed or might thereafter exist between the parties should be paid, when it was to become void.

The business was conducted by Mathilde under this agreement after her father's death, which occurred February 21, 1911, and down to September 23, 1913, when she made a transfer to Charles Blauw, one of the defendants, which will be referred to hereafter. Under the trust agreement very little was paid to the creditors mentioned in the agreement, and additional obligations were created by Mathilde. In May, 1913, however, a compromise was made with the creditors mentioned in the agreement, and on May 28th a release was executed to her by these creditors on the payment of the sum of $1,490. This money was raised by an advance of $600 by the plaintiff and the indorsement of a note of Mathilde for $890 by Charles Blauw. Under the trust agreement, and down to the time when Mathilde transferred the business to Charles Blauw, plaintiff drew $21 a week under the trust agreement, and after the transfer to Charles Blauw she received $10 a week from those in charge of the business. Mathilde continued to run the store, after the adjustment with the creditors above mentioned, down to the transfer to Charles Blauw. She became engaged to be married, and desired to remove to Luzerne, Switzerland, and it became necessary to make other arrangements with reference to the business, and then it appears that on September 23d she executed and delivered to Charles Blauw a bill of sale of the entire business, including the catsup essence business, referring to the business as her own, although there is nothing in the evidence to show that any transfer of the business to her as an individual ever had been made. She married and left the country, and has not returned since, and her version of the transaction was not before the court.

Prior to and about the time of Mathilde's departure there were conversations between the plaintiff and her brothers with reference to the conduct of the business after Mathilde's marriage. One of plaintiff's brothers leased a piece of property near the location of the Klinzing business, and on or about October 1, 1913, the effects of the Klinzing business were moved to the new location. From that time on the business was handled by the defendants; no member of the Klinzing family having anything to do with the conduct of the business excepting Carl, one of the children, who worked in the store for a short time. On January 8, 1914, the Blauw Bros., Incorporated, was formed; the incorporators being William H. Blauw, J. Max Blauw, and Ernestine M. Klinzing, one of Klinzing's children. Charles Blauw, who held the bill of sale of the Klinzing business from Mathilde, transferred the business to the new corporation. On June 4, 1914, the real estate purchased in the name of one of the brothers was transferred to the corporation. Drugs and other property, of the estimated value of $1,848.96 according to an inventory made at the time, were taken to the new location and mingled with the property of Louis Klinzing. The name "Klinzing Pharmacy" appeared over the door of the new store, and above that there was an electric sign, "Blauw Bros., Inc. Drugs." William H. Blauw advanced $1,485 for the purchase of fixtures, which were used in conjunction with fixtures moved from the Klinzing store, Amanda Blauw, a sister of plaintiff and the defendants, advanced $2,688.26 at various times, by paying for merchandise that had been purchased and delivered at the new store. William H. Blauw, a licensed pharmacist, drew $12 a week, although a fair value for such services was $25 a week. August Blauw drew from the business $10 a week, and Mrs. Klinzing continued to receive $10 a week until the commencement of this action. Under the supervision of the two brothers just mentioned, and with the advice of Charles Blauw, an experienced pharmacist formerly engaged in the wholesale drug business in Rochester, the business has been continued and developed until it is now fairly prosperous, although there are many outstanding obligations, which are being reduced gradually from the proceeds of the business; the assets now being estimated at about $7,000 or $8,000.

Thomas L. Toan, of Perry, for plaintiff.
William B. Hanks, for defendants.

RODENBECK, J. [1] 1. Charles Blauw and the Blauw Bros., Incorporated, acquired no title to the Klinzing business from Mathilde Klinzing by virtue of any interest she had under the so-called trust agreement and the transfer from Charles Blauw. Briggs v. Davis, 20 N. Y. 15, 75 Am. Dec. 363; Grote v. Grote, 121 App. Div. 841, 106 N. Y. Supp. 986. Mathilde was "trustee to receive the income and profits from the business" and to devote them to certain purposes, and the agreement was to become void when the "indebtedness which now exists or hereafter may exist between the first and second parties hereto shall be fully paid up and discharged." The indebtedness mentioned was paid May 29, 1913, and thereupon the agreement became void. No other interest in the business, except as a child of Louis Klinzing, deceased, is shown in Mathilde, other than that contained in this agreement. The purported transfers from William R. Barnum and Blauw & Barnum were wholly ineffectual. Mathilde's possession, after the expiration of the so-called trust agreement, was in subordination of the true owner. Upon the termination of the agreement the property was vested in the estate of Klinzing without formal transfer. Mathilde's bill of sale to Charles Blauw, dated September 23, 1913, transferred nothing. There was no consideration for it, and Mathilde could not dispose of property to which she had no title. She also gave a power of attorney to August Blauw on the same day, but no title rests upon any act of his, and Mathilde could bind no interest by the power of attorney except her own. The transfer from Mathilde to Charles Blauw being void, that from Charles Blauw to Blauw Bros., Incorporated, falls with it, and the defendants acquired no interest in the Klinzing business by virtue of any written documents in evidence.

2. Blauw Bros., Incorporated, however, did not acquire an interest in the Klinzing drug business by virtue of any oral agreement between Mrs. Klinzing and the defendants. August and Charles Blauw spoke with her about the continuance of the business when Mathilde was about to leave for Switzerland. She knew that Mathilde had executed the bill of sale to Charles Blauw, and that some other plan was in contemplation for carrying on the business. She was told that creditors were threatening the concern, and that if they were not satisfied the business would be sold. She says that August Blauw told her she could not expect to get more than $2,400 for the business, and it appears that at that time there were $2,415 in outstanding obligations, $925 of which was a new account contracted by Mathilde during her conduct of the business; the remainder being in the form of a note for $890 and cash for $600 due plaintiff. There was talk of forming a corporation for carrying on the business, and one of her daughters was an incorporator in the company which was formed 3½ months later. Property was leased by one of the defendants, and subsequently title to it was taken and transferred to the company. The Klinzing stock was moved to the new location June 4, 1914. A stock of merchandise owned by Charles Blauw, estimated at $1,848.96, was moved to the new store. Amanda Blauw advanced $2,688.26 for payment of merchandise, and William H. Blauw expended $1,425 for fixtures and payment of debts of the company. Mrs. Klinzing visited the store at

times, and her son Carl worked there for a time. She must have known of these facts, but I am unable to find that she made any agreement with her brothers to sell the business to them. No one testified to any such agreement. There is no evidence that the consideration to be paid her was even mentioned. Without any agreement the defendants have appropriated the Klinzing business and are liable in this action to account for it.

3. But, even if there was an agreement with the plaintiff to purchase the business or continue it, the arrangement would not be binding upon her children. Klinzing died intestate, and at the time that the facts recited above took place no administrator of his estate had been appointed, and there was no one who could bind his estate. So far as the interest of the children is concerned, therefore, the 'defendants are without title, even if what they claim with reference to Mrs. Klinzing's agreement be true. There is no evidence that any of the children ever authorized her to act for them, or to transfer their interest in their father's business. Charles Blauw and the Blauw Bros., Incorporated, therefore, acquired no legal title to any part of the Klinzing business through any transactions with Mathilde Klinzing or her mother, the plaintiff in this action.

4. The relationship existing between the parties was that of brothers and sisters, and was confidential and fiduciary in character, and the defendants are liable to account for the property also as trustees. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067. As such they converted the property to their own use and that of the Blauw Bros., Incorporated, and, having treated the property so that it cannot be distinguished and separated, they are liable to account for the value thereof. Frethey v. Durant, 24 App. Div. 58, 48 N. Y. Supp. 839; Matter of Mullon, 145 N. Y. 98, 39 N. E. 821; Decedent Estate Law (Consol. Laws, c. 13) § 112. The facts are such that the case is not one where the defendants should account for the increase or profits derived from the property, but for its value at the time of appropriation, with interest thereon. This value, as testified to, ranges from $3,800 down to $625. There was an inventory made May 10, 1910, which aggregated $2,400, which did not include the good will of the business. August Blauw told plaintiff that she could not expect to get more than $2,400 for the business. I think a fair value, under the circumstances, for the purpose of a basis for a new business in the same locality, for which the property was used, would be $3,300. The defendants, however, are not liable for this value without deductions. They should not be expected to make good this sum and pay the debts outstanding, which aggregated $2,415 when the goods were moved to the new location. Bennett v. Lyndon, 8 App. Div. 387, 40 N. Y. Supp. 786; Sutherland on Damages, § 156; Snell's Principles of Equity, p. 146; Thomas v. N. Y. Life Ins. Co., 50 N. Y. Super. Ct. 225; Roggenkamp v. Roggenkamp, 68 Fed. 605, 15 C. C. A. 600; Rutherford v. Thompson, 14 Or. 236, 12 Pac. 382; Schouler on Executors and Administrators, §§ 1190, 1191. They should be allowed the amount of the obligations which they have assumed to pay on account of the Klinzing business, and are liable to account to the plaintiff for the difference be-

tween the value and the debts paid or assumed by them, $1,815, or the sum of $1,485.

[2] 5. But because the defendants have not acquired title to the Klinzing business, and have merged it with their new business, is no reason why, under the facts, the plaintiff should be entitled to the new business. The good will of the Klinzing business has been destroyed. Most of the stock of the Klinzing business has been sold and cannot be replaced. Some is still on hand, but is merged and mingled with the new stock. The Klinzing business cannot be separated from that of Blauw Bros., Incorporated; but that fact does not entitle plaintiff to the new business, which is in a new location, and is substantially new in stock and good will. This is not a case of such merger or mingling under the law as will entitle the owner to the whole property, because his own cannot be distinguished and separated. In this case there is a substantial disappearance of the old and the substitution of a new business, and equity under such circumstances will compel an accounting because a restoration is impracticable.

6. Some of the property belonging to Klinzing has been sold or dissipated. The good will is gone. The fixtures have been combined with new fixtures. The stock has been mingled, if not confused, with that in the new store. This condition being due to acts of the defendants, the plaintiff is entitled to a lien upon the property of the Blauw Bros., Incorporated, for the sum of $1,485, subsequent only to any existing liens. Perry v. Board of Missions, etc., of Albany, 102 N. Y. 99, 6 N. E. 116; Schermerhorn v. Gardenier, 107 App. Div. 564, 95 N. Y. Supp. 494; Price v. Palmer, 23 Hun, 504. The equitable lien here referred to is of that class "declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." Jones on Liens, § 27; Pomeroy's Equity Jurisprudence, § 1239; 25 Cyc. 667; Van Alen v. Am. Nat. Bank, 52 N. Y. 1; Chapman v. White, 6 N. Y. 412, 57 Am. Dec. 464; Arnold v. Morris, 7 Daly, 498; Hale v. Omaha Nat. Bank, 49 N. Y. 626; Haggerty v. Palmer, 6 Johns. Ch. 437; Triest v. Noval, 32 Misc. Rep. 386, 66 N. Y. Supp. 717.

7. This decision does not affect the catsup essence business, which was never transferred to the company, and of which Charles Blauw acquired no valid title. The property, formulæ, and good will of that business belong to the plaintiff, as administratrix of her husband's estate. Nor does this decision affect the $600 loan made by plaintiff. That is a claim in her individual capacity, and cannot be litigated in this action. William H. Blauw was working in the Klinzing store at the time of the conversion, and took part in transferring the stock and fixtures. August Blauw arranged for the loan with plaintiff, and otherwise took part in the transactions. Charles Blauw was a party to the alleged bill of sale from Mathilde Klinzing. All of them are mixed up in the transactions, and judgment is granted against all of the defendants, except J. Max Blauw, against whom the complaint is dismissed, without costs.

Plaintiff is entitled to costs against Blauw Bros., Incorporated.