# SUPERIOR COURT OF BALTIMORE CITY.

Filed November 28, 1923.

AUGUSTUS C. BINSWANGER
PLAINTIFF,
VS.
THE MAYOR AND CITY COUNCIL OF BALTIMORE, DEFENDANT.

*Vernon Cook* for plaintiff.
*Allen A. Davis*, Assistant City Solicitor, for defendant.

BOND, CARROLL T., J.—

The prayers raised four questions as I understand the case.

1. Whether the City Solicitor would have power to employ lawyers for the city in addition to the Deputy and the Assistant City Solicitor specified in Section 62 of the Charter.

2. Whether there is legally sufficient evidence to enable the jury to find that the City Solicitor actually employed the plaintiff under that power if he possessed it.

3. Whether attorney's services on the side of the Mayor's appointee in the case of McMahon vs. Thompson could be charged against the City as having been rendered to it on City business; and

4. The services for which compensation is asked in this suit having been rendered more than three years before the suit was filed, and a plea of limitations having been filed, did the

right of action for the services accrue, in the view of the law, more than three years before the suit.

On the first question as I have formulated it, that is, Whether the City Solicitor would have power to employ lawyers for the City in addition to the Deputy and the Assistant City Solicitor specified in Section 62 of the Charter.

On this it has seemed to me, as I have said, that there is at least room for doubting the power. But I think there is much force in Mr. Cook's argument on the other side. City Solicitors have been employing lawyers for additional legal services for twenty years or more on that theory, and we must assume that at least the City Solicitor under whom the practice started studied the question carefully and decided it upon a construction supporting the power. That would indicate that there is another side to the question, certainly. I agree that in the face of these facts I should not, sitting alone, decide against the power, unless the decision is unescapable. I do not think it necessary to decide the point, and I have not come to a conclusion on it.

The second question, whether there is legally sufficient evidence to enable the jury to find that the City Solicitor actually employed the plaintiff under that power if he possessed it, would be decided for the plaintiff. I think there is something in the plaintiff's evidence which would have to be considered in connection with the other evidence pro and con, for a decision on the question of fact.

The third question is, Whether attorney's services on the side of the Mayor's appointee in the case of McMahon vs. Thompson could be charged against the City as having been rendered to it on City business. On the question of legal sufficiency of the evidence on the case as a whole, it would be an answer to this question that not all the work testified to seems to have been in the case of McMahon vs. Thompson. Ordinarily, I believe, a contest between two individuals over the title to an office would not be City business. It might be party business, but not public business. I think I see one view in which, regarding the McMahon and Thompson case as a test to solve a question which was interfering with the functioning of the City

Government, the services rendered might be considered as having been rendered for the public, that is for the City. I am not clear that that view would be supported by the evidence, and I leave it in that position, because I do not find it necessary to a decision. From an early stage in the taking of the testimony it appeared to me likely that the case must be disposed of on the plea of limitations; and a study of the evidence and the arguments since Friday has confirmed me in the view that there is no avoiding the effect of the statute.

Whatever construction we may be disposed to put on the power to employ "assistants" under Section 65 of the Charter, it is clear under that section they are not appointed to offices, and they are not employed upon any terms fixed by the Charter, either as to the length of employment or as to work to be done. They are employed only to the extent of an agreement actually made. Such an agreement might stipulate for almost any terms. It might be for a continuous piece of work to run along in the future, or for a definitely limited time, or until further notice, or it might be purely casual, for unconnected pieces of work. If the testimony should show that Mr. Binswanger was retained by the City Solicitor for a definite period, or for a continuous piece of work, such as one long case, then Mr. Binswanger's right of action for compensation would accrue upon the completition of the time or work specified. On the other hand if the retainer or agreement covered only such pieces of work as might actually be given the attorney, the right of action for services would accrue at the end of each integral piece of work. That would also be true, under the decided cases, if the employment were general, for such work of a given kind as might come up from time to time. In addition to the cases cited, I would call your attention to two others, recent cases, in which the contrast is illustrated.

Osborn vs. Hopkins, 160 Cal. 501, Ann. Cas. 1919 A413, with a note appended to it reviewing a large number of decisions on the general subject when the statute of limitations begins to run on action of attorneys for services. This case of Osborn vs. Hopkins is a case in which an attorney was employed in anticipation of litigation

in the future to defend any and all suits that might be brought against the client by the client's wife; he appeared and defended several suits subsequently brought by the wife, and then some length of time after when there were no more coming, sued for his services. The plea of limitations was filed. The Court said such services were not on an entire or continuing contract under the meaning of the rule, but at the termination of each of the separate cases the attorney's right of action accrued, so as to set the statute of limitations running against him. I should add that in a note at page 419, you will find that is a general principle, that where an attorney is employed generally to represent a party in all litigation, the action for services accrues when the services are rendered and the statute of limitations begins to run. At the same time on the opposite state of facts see the case of Martin vs. Camp, 219 N. Y. 170.

That seems to bring the case down to the principle also stated in the case of Dempsey vs. McNabb, 73 Md. 438, which is closely similar to another New York case referred to cited in these books; in re Gardiner, 103 N. Y. Reports—I have mislaid my note as to the page, but it is 103 N. Y.

When we review the testimony we find this to be the evidence in support of the plaintiff's contentions. Mr. Binswanger says: "He (Mr. Marchant) told me he wished me to assist him in the law department, and he gave me a specific test on which I rendered him an opinion on the 3rd of October, 1919." Asked whether any definite time or definite work was specified, he said, "No. I recollect when I first saw him he talked to me, considered my being in the Council, eight years I think it was, and I was familiar with the Mayor's appointments, with the Democratic Second Branch, and other questions coming up. I spoke with him and assisted in these matters," and he added, "And he would call me from time to time and assign me to certain work." Again, asked whether he held himself in readiness to perform the additional work, he said, "I went along with Mr. Marchant in these various things. Went over to see him. He called me up from day to day. I think there is a matter in which I gave an opinion, whether it was left out or not, whether it was left out in the ordinance of es-

timates—his first ordinance of estimates was for the fiscal year 1920, and naturally was passed by the Council in 1919, and the City Solicitor who comes in now, like he did four years ago, would make up the ordinance of estimates for the following year. During that time I gave an opinion that anything left out the Ordinance of Estimates, which he was then preparing for the fiscal year 1920, there could be a supplemental Ordinance of Estimates." Asked when the employment was terminated he said, "After the Thompson case I think was over in the latter part of November, I was in the office there with Mr. Marchant from time to time with this opinion that I mentioned in the Ordinance of Estimates, and after he said to postpone payment of the work that I had done, as he had some other work, as I recall it, and I should stop in to see him from time to time. I did that. I stopped in in January and February, and then afterwards I don't think I saw him during the summer very much, but in the fall of 1920—in September, 1920, I visited him in connection with the question of putting my claim in the Ordinance of Estimates for the next succeeding year, which would have been the year 1921, and nothing was done about it except he had some other work that he wanted me to take up when the time was ripe—it wasn't ripe yet."

And that gentlemen, seems to cover it all except that when he is asked how long his services ran, he said, Continuously from October 3rd on until December 10th. Now, nothing was done according to this evidence by Mr. Binswanger after December 10th, 1919; no further work was given to him; he was not engaged for anything else; he was told merely to stop in from time to time after that. He stopped in in January and February, 1920, and then in September, 1920, to ask about compensation. Now, this seems to me to come clearly within the principle stated in the California case and in the note in Annotated Cases. I don't think by any possible construction we can make that out to be a contract which would begin the right of action later than the actual rendition of the services rendered. I call your attention to Dempsey vs. McNabb, and the New York case, which I ran across on the same point, which state specifically that when you sue on implied obligation to pay for services

rendered, the statute of limitations runs from the time of the rendition of the services. That being true, the right of action under the law accrued upon the completion of each piece of work, and the lapse of time between that and the filing of suit in this case having been more than three years, the plaintiff's suit is barred under our law.

I therefore decide that the second prayer, as I see the law, requires that I direct a verdict for the defendant.

(Mr. Cook) Your Honor, we will note exceptions to all adverse rulings. You might take the verdict, we will waive the absence of the missing juror.

(The Court) The absence of the missing juror is waived and the verdict is to be taken by the remaining eleven?

(Mr. Davis) Yes.