Isaac Beall, Wm. T. Beall and other's lessee, *vs.* Nelson Beall and John Hendrixon.—*Dec'r* 1848.

Where a prayer omitted material facts, of which testimony had been offered, and which were essential to raise the question upon which, by the prayer, the decision of the court was invoked: HELD, that it was properly rejected.

The court being of opinion, that the substantial merits of the case were not determined by the affirmance of the judgment of the court below, the cause was remanded with a procedendo under the act of 1830, ch. 186.

APPEAL from *Allegany* county court.

This was an action of *ejectment*, brought by the lessors of the appellant, in 1846, against the appellees, for a certain lot of ground situated in the town of *Cumberland*, and described in a plat of said town as "lot No. 280," being part of a tract of land called " *Walnut Bottom.*"

30    v.7

At the trial, the plaintiffs to support the issue on their part, offered in evidence the patent for the tract of land called "*Walnut Bottom*," granted to *George Mason* on the 25th of March 1756, and also the will of *Thomas Beall, of Samuel,* duly executed, to pass real estate on the 16th of November 1823, and duly admitted to probate on the 9th of December of the same year, by which the testator devised and bequeathed "all the rest and residue of my estate, both real and personal, to be equally divided among my eight grand-children, to wit: *William T. Beall, Benjamin M. Beall, Joseph T. Beall, Isaac W. Beall, Samuel B. Beall, Daniel Beall,* and *Elizabeth B. Beall,* children of my son, *Isaac Beall,* to them, their heirs and assigns, forever, in equal portions, share and share alike."

They then proved, that the lessors of the plaintiff were the residuary devisees named in said will; and further proved by *Henry Wineow,* a competent witness, that he came to the town of *Cumberland* in 1792, and is now seventy-seven years of age. That when he came to said town, *Thomas Beall, of Samuel,* was in possession of the tract of land called "*Walnut Bottom,*" claiming title to the same and exercising acts of ownership over it; that said *Beall* had previously laid out the town of *Cumberland* on said tract of land called "*Walnut Bottom,*" and sold out town lots to different purchasers before the year 1792. That witness has been a citizen and resident of said town from the year 1792 to the present time; that he never knew of *George Mason,* or any of his heirs, being in said town, or laying claim or title to said tract of land, but that the said tract remained in the possession of said *Beall,* except such parts thereof as he had previously sold as town lots, and otherwise, from the year 1792 to the time of his death, in the year 1823 or 1824. They then proved, that the lot in controversy was one of the town lots thus laid off by said *Beall,* and designated upon the plot of said town as lot No. 280, and was part of and within the lines of "*Walnut Bottom.*" They then further proved by said *Wineow,* that in the year 1797, said *Beall* took witness and some seven or eight other citizens, neighbors, who lived near to said lot, and it was agreed, that

if said *Beall* would give the lot, they would erect a market house thereon for the use of the citizens of the town. It was understood at the time, that it was given for the purpose of a market house, and for no other purpose; and from what passed at the time between said *Beall* and witness, and the other citizens, witness thought that the gift as made, was for the purpose of a market, and for no other purpose, and that such was the understanding, both of said *Beall* and said citizens; that witness, during the same year, erected upon said lot a market house, and was paid for the same by the citizens, and that the public has had possession of said lot from the time it was given until it was sold. It was then admitted, that no deed or other conveyance was made by said *Beall*, for said lot, to any persons. It was further admitted, that the town of *Cumberland* was first incorporated in 1815, and that in the year 1822 or 1823, the corporate authorities of said town had a new roof put upon said market house, and that eight or nine years ago, they had a wall built on the west side of said lot, binding on *Wills Creek*, intending to keep up said lot as a market house. It was further proved by said *Wineow*, that the market house erected by him in 1797, was used as a market house for eight or nine years, and then fell into disuse, because the patronage did not justify the butchers and country people going to market; that said market house remained standing upon said lot, until after the same was sold by the corporation of *Cumberland* to the defendants, in the year 1843. It was further admitted, that said lot was all the time known and called the market house lot, after the erection of said market house, and that from the year 1797 up to the time of the sale of said lot to the defendants, there was no other market house or market place in said town.

The defendants then offered in evidence the act of Assembly of 1842, chap. 33, by which it was enacted :

"That the mayor and councilmen of the town of *Cumberland*, in *Allegany* county, be, and they are hereby authorised and empowered, in their discretion, to sell and convey, by deed, in fee-simple, a certain lot or parcel of land lying and being in said town, and described in the plat of *Beall's* addi.

tion to said town as lot number 280, beginning,'' &c., "and to apply the proceeds of said sale to the erection of a new market house in said town.''

"Sec. 2. And be it enacted, that a deed of bargain and sale, executed under the hand and seal of the mayor, and the hands and seals of the councilmen of said town, for the time being, or a majority of them, shall be held and deemed sufficient and effectual to vest a good title, in fee-simple, in the purchaser or purchasers of said lot or parcel of land.'' Also a deed duly executed and recorded, bearing date the 2nd of July 1843, from the mayor and councilmen of the town of *Cumberland,* conveying the said lot to the defendants.

It was further admitted, that since the sale of said lot to defendants, the said defendants have pulled down said market house, and are using and claiming the same as their individual property. That the corporate authorities of said town have since purchased another lot and erected a permanent market house thereon, where market is now regularly held. It was further admitted, that the money arising from the sale, was appropriated for the purchase in part of said last mentioned lot. Upon which the said plaintiffs offered the following prayer:

The plaintiffs, by their counsel, pray the court to instruct the jury, that if they shall believe from the evidence in the cause, that *Capt. Thomas Beall, of Samuel,* was in possession of the lot in controversy, as part of " *Walnut Bottom,*" in the year 1792, and continued in the possession thereof, claiming and using it as his own, up to 1797, and that *Capt. Thomas Beall, of Samuel,* only intended to permit the inhabitants of *Cumberland* to use the lot in controversy as a market place, for building a market house, and using it as such so long as the inhabitants might think fit to use the same for said purpose; and if they shall further believe from the evidence in the cause, that said inhabitants held possession of said lot under the permission of said *Beall,* as aforesaid, for a period, which, together with *Beall's* own possession, would constitute a possession for more than twenty years, that then they may presume a deed from *Mason,* the patentee, to the said *Thomas Beall, of*

*Samuel*, which was rejected by a division of the court. The plaintiffs thereupon excepted and appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE, and FRICK, J.

By EVANS and PERRY for the appellants, and
By McKAIG for the appellee.

SPENCE, J., delivered the opinion of this court.

In this case, it is the opinion of this court, that the county court properly refused to give the instruction asked by the plaintiffs' prayer, inasmuch as it omitted several material facts, of which testimony had been offered, and which were essential to raise the question on which, by the prayer, the decision of the court was invoked.

We therefore affirm the judgment; but as it does not appear to this court, that the substantial merits of this case are determined by the judgment, the clerk of this court is directed, under the provision of the act of 1830, ch. 186, to return the transcript of the record to the clerk of Allegany county court, with a writ of *procedendo*.

JUDGMENT AFFIRMED AND CAUSE REMANDED, WITH
PROCEDENDO UNDER THE ACT OF 1830, CH. 186.