# MARYLAND CASUALTY COMPANY

## *vs.*

## WEST CONSTRUCTION COMPANY.

*Affirmance on Appeal—Award of New Trial—Construction Contract—Unit Price—Extra Work—Limitations.*

Code, Art. 5, sec. 22, providing that in all cases where judgment shall be reversed or affirmed by the Court of Appeals, and it shall appear to that court that a new trial ought to be had, such new trial shall be awarded, empowers the court to award a new trial on affirming a judgment, even though the merits of the controversy were involved in the first trial.        p. 177

The Court of Appeals may, on affirming a judgment, provide that the affirmance shall be without prejudice to any claim which the plaintiff may be entitled to assert, and thereby enable it to bring another suit on the same contract.        p. 182

In an action on a contract made by defendant surety company with plaintiff for the completion of certain municipal work left unfinished by a former contractor, upon whose bond defendant was surety, *held* that the contract in suit required compensation for work done by plaintiff to be adjusted exclusively on the basis of unit prices set out in the contract.

pp. 183-185

A claim for extra work, not provided for in the contract, accrues, for the purpose of the statute of limitations, upon the performance of the extra work, without reference to an express provision in the contract as to the time of payment.        p. 185

*Decided June 28th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

Action by the West Construction Company against the Maryland Casualty Company to recover on a contract for certain construction work. From a judgment for plaintiff, defendant appeals. *Reversed.*

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Charles T. Reifsnider* and *Walter L. Clark,* for the appellant.

*J. Kemp Bartlett* and *J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant was surety on the bond of Carl T. Opperman for the completion of certain construction work under a contract between him and the City of Harrisburg. He having made default in the performance of the contract, the appellee and the appellant entered into an agreement on the 27th day of September, 1913, by which the appellee agreed to perform any and all work remaining unfinished under the contract between Opperman and the said city. Suit was brought by the appellee against the appellant, for the recovery of $3,-485.88 withheld by the city as the retained percentage upon the work theretofore performed by Opperman. The lower court refused to grant a prayer recognizing the right of the plaintiff to recover that sum, and we concurred in its action. In the course of the trial, which was before the court without a jury, two errors were discovered, one for $750 and another for $407.50, which were admitted by the casualty company and, although the court did not allow recovery for what was sued for—the retained percentage—a judgment was rendered in favor of the plaintiff for $1,307.25, being the sum of the two items above mentioned, together with interest on them.

The appellee (then plaintiff), not being satisfied with the amount of recovery, took an appeal to this Court, it being amongst the unreported cases in 132 *Maryland,* 699. The opinion in that case concluded by saying: "The judgment will be affirmed, no reversible error having occurred in any of the rulings at the trial, but the affirmance will be without prejudice to any claim which the plaintiff may be entitled to assert for work done under its agreement with the defendant on account of the deficiencies or imperfections in the

prior work on the same project." When the mandate was issued to the lower court it only recited that the judgment was affirmed with costs. A petition was then filed by the construction company, asking this Court to amend or modify its mandate so as to read: "Judgment affirmed, with costs, but without prejudice," etc.—following the language of the opinion we have just quoted. That was granted and the mandate was amended accordingly. A new suit was then brought —resulting in a judgment for $5,655.63, from which this appeal was taken.

The basis of this suit was the work of making good the deficiencies and imperfections in the prior work of Opperman under his contract. The plaintiff filed six common counts and two special counts. The defendant filed the two general issue pleas, a plea of limitations and its fourth and fifth pleas, setting up the former judgment as a bar to this suit, and alleging that by virtue of an order of the Superior Court it had paid into court the sum of $1,284.23 in full satisfaction, release and discharge of said judgment, interest and costs. The plaintiff joined issue on the first and second pleas, traversed the third (of limitations) and demurred to the fourth and fifth. The demurrers to those two pleas were sustained, and afterwards an amended fifth plea was filed and a demurrer to it was sustained. Fourteen bills of exceptions to the rulings on evidence are in the record and the fifteenth embraces the rulings in rejecting its nine prayers.

The appellant very earnestly contends that this Court had no power to authorize another suit to be brought on the contract, and that the judgment of affirmance was a bar to this suit, notwithstanding what was said in the opinion and the modification made to the mandate. As that is the most important question involved in the appeal, not only as affecting this particular case, but the practice in this Court, we will first consider it. We can have no doubt about the correctness of the general principles as announced in the many authorities cited by the appellant as to what constitutes *res*

*adjudicata*, that a party cannot generally split his cause of action, etc. For the most part they may be conceded, but do they reach the real point in this case.

It will be well for us to quote from the former opinion at some length, especially as it was not reported. JUDGE URNER, in speaking for the Court, said:

"It is said that the appellant was required to remedy defects in portions of the work which the first contractor performed, and that this duty was assumed by the appellant under its agreement, and furnishes adequate support for its theory that it is entitled, and was intended, to receive the amount of the retained percentage of the cost of the previously finished work over and above the price agreed upon for the work then remaining uncompleted. In reference to this suggestion it is to be observed that the agreement between the appellant and the casualty company provided specifically for payment on the unit price basis therein designated for *all* of the work for which the appellant contracted, and upon that basis alone, therefore, must its compensation be ascertained. The appellant's undertaking was to perform the work left uncompleted by Opperman in accordance with the specifications of the contract he had executed. That description of the work yet to be done clearly included such operations as might be necessary to supply deficiencies in the construction previously attempted and to complete it as required by the specifications. The work defectively done by the preceding contractor was unfinished work within the terms of the appellant's agreement. For such work the appellant was undoubtedly entitled to be paid, but only at the unit price rate of compensation, which the contract defines as applicable to every feature of the work for which it makes provision.

"The evidence in the record does not show the items or contract value of the labor and materials furnished by the appellant in supplying deficiencies in the prior construction. It is stated generally in the testimony that the appellant was required to do such supplemental work and thereby incurred

considerable expense. No allowance for work of that nature appears to have been made in the accounting between the casualty company and the appellant, their settlement, however, being expressly without prejudice to the rights of the parties to assert their respective theories in reference to the question now under consideration. The contention of the casualty company, in substance, is that, under the agreement, all the work required to complete the project according to specifications, including the correction of defects in the preceding work, was to be done by the appellant for the amount which the casualty company was to receive from the city, plus the difference between that amount and the price, on the new contractual basis, of the work which the first contractor had left wholly unperformed. Neither this view, nor that of the appellant, already indicated, is in accord with our interpretation of the contract by which the rights of the parties are to be determined. In our opinion the correct meaning of the agreement is that the appellant should be paid at the specified unit prices for all work required to complete the project conformably to the specifications of the original contract, both as to the portion of the construction not previously begun and as to that which had been undertaken but left in an imperfect condition."

As there was sufficient in the record to indicate that the plaintiff, under a proper construction of the contract, might be entitled to recover for such deficiencies and imperfections as it could prove, and had not been allowed, it seemed to us to be just and proper to do what we did, and we affirmed the judgment without prejudice to the plaintiff asserting its claim for them. That was peculiarly proper as the West Construction Company had, on August 12th, 1915, in acknowledging receipt of a check, written to the casualty company:

"It is hereby mutually understood that the acceptance of this check shall be without prejudice to the rights of either party to assert further claims in the final settlement under the contract by the terms of which said work was done. This is the understanding had to

between your Messrs. R. F. Proctor and Walter Clark
at your office on the morning of August 11th, 1915."

And that was substantially agreed to by letter of same date.

When the suit was brought it was, as we have seen, for the
retained percentage—the theory apparently being that as that
was retained from Opperman out of the estimates allowed
him for work done, and as there were deficiencies and im-
perfections in that work which the construction company had
corrected, it was entitled to recover the amount so retained,
which had been paid over to the casualty company. As we
agreed with the lower court that that was not correct, but also
agreed that the plaintiff was entitled to recover for the two
items spoken of, and found no error in the rulings of the court,
we affirmed the judgment, but in doing so stated what is
quoted above. There is no doubt that we intended that our
affirmance of the judgment should not preclude the plaintiff
from asserting its claim for such work. The petition to have
the mandate amended was served on the counsel for the casu-
alty company on April 19, and our order was not passed un-
til May 3, 1918. No objection was filed to the petition, and
no motion for modification of the judgment or opinion was
made. The question then would seem to be whether we had
the power to bind the lower court by such a decision and, if
we had, then it must stand, unless we have the right to now
disturb it, and determine it is proper to do so.

Section 22 of Article 5 provides that:

"In all cases where judgments shall be reversed or
affirmed by the Court of Appeals, and it shall appear
to the court that a new trial ought to be had, such new
trial shall be awarded and a certified copy of the opin-
ion and judgment of the Court of Appeals shall be
transmitted forthwith to the court from which the ap-
peal was taken, to the end that said cause may be
again tried as if it had never been tried," etc.

There could have been no serious question about the *power*
of the Court, under that section, to award a new trial not-

withstanding it affirmed the judgment, if it appeared to the
Court that a new trial ought to be had. The statute says so,
and while we have usually confined the exercise of that power
to cases which had been disposed of on the pleadings, we can-
not concede that we do not have the power to do so. The con-
cluding line quoted above from the statute would have the
life taken out of it, if it be construed to mean that there
could never be a new trial awarded by this Court under such
circumstances as now confront us. It says that it may be.
again tried—that is, after it has been once tried—and not
only that, but "as if it had never been tried." It is ex-
pressly made to apply whether the judgment is reversed *or
affirmed*, and there is not the least suggestion that if the
merits of the controversy were in any way involved in the
first trial, it never could be tried again. The statute now in
the Code is broader than it originally was. The object of the
Legislature was to get rid of the manifest injustice so often
done under the old practice, as the result of technicalities, the
enforcement of which might sometimes seem to intelligent
laymen as well as lawyers to be regarded as of more impor-
tance than seeing that justice was done. In *Kennerly, Ex-
ecutrix, v. Wilson*, 2 Md. 245, the Court sustained the right of
the executrix to recover, but affirmed a judgment in favor of
the defendant, on the ground that the declaration did not
aver damages to the executrix, but the Court ordered a
*procedendo.* JUDGE MASON said: "It is true no case has been
cited where the power has been exercised by the late Court
of Appeals in a case like the one now before us, and even
cases have been referred to where similar applications have
been refused by that Court. But it by no means follows
from these two circumstances that no such power has been
vested in this court." *Earnshaw* v. *Sun Mutual Aid Soc.*,
68 Md. 465, was a suit on a certificate of membership in
that society. The lower court held that the action was
barred by limitations, and also excluded the certificate as evi-
dence, on the ground of variance between it and and the con-

tract sued on. This Court held that the action was not barred, but agreed with the lower court in excluding the certificate which would have authorized an affirmance of the judgment, and the opinion concluded: "But conceding this to be so, and that the judgment ought to be affirmed; still, we think it a clear case where a new trial ought to be had notwithstanding the affirmance, and to that end we should use the power vested in this Court by the Code, art. 5, sec. 16 (now 22), *Kennerly* v. *Wilson,* 2 Md. 245. It is immaterial to the parties therefore whether we affirm and remand, or reverse and remand, and we adopt the latter course."

No more striking illustration of the result of technicalities could be furnished than by the case of *Farmers' Bank* v *Bowie,* 4 Md. 290. There the judgment was in favor of the defendant because the notice of protest was insufficient, and the Court refused a *procedendo,* although in the case of *Graham* v. *Sangston,* 1 Md. 59, where, as stated in 4 Md. 294, the notice was identically the same, a *procedendo* was ordered. CHIEF JUDGE LE GRAND, who delivered the opinion in both cases, said: "This case is not like that of *Graham* v *Sangston;* there the judgment was reversed on the appeal of the plaintiff, whilst here it is affirmed on his appeal." It may be remarked in passing that the case of *Graham* v. *Sangston* was not reversed on the appeal of the plaintiff, but on the appeal of the defendant, and if the action of the Court was based on such distinction, it was based on an error of fact, but, conceding that to be immaterial, it will be seen that the refusal to grant the *procedendo* was based on the construction of the Act of 1830, Chapter 186, which concluded with a provision "that nothing herein contained shall be construed to authorize the return of any transcript in any cause where the judgment of the Court of Appeals would be a bar to a new action brought upon the same cause." "The same cause" in that case was the endorsement on the note—"the pleading would show the cause of action to be the same in both cases," as said in that opinion. But whether or not

there could be a distinction between such case and this, where the suit is based on the same contract as the former one, but the judgment there was given for wholly different items from those in this case, we need not discuss, for the important thing for our consideration is the fact that the present statute no longer has any such proviso as the Act of 1830 had.   In the Codes of 1860 and 1888, both of which made many material changes in the original acts, that proviso was omitted, as it was in the Codes of 1904 and 1912, and in the late rules adopted by us.   When the former acts were codified in the Code of 1860, and the same language has since been used, the omission of that provision in the Act of 1830 is significant.   The broad language of section 22 of article 5, is that "*in all cases* where judgment shall be reversed or *affirmed* by the Court of Appeals, and *it shall appear to the Court that a new trial ought to be had,* such new trial *shall be* awarded," etc.

In *Parker v. Sedwick*, 4 Gill, 318, there was an action of debt on a judgment recovered on an administrator's bond in Virginia, but a deposition offered by the plaintiff was excluded on the ground that the defendant did not have proper notice of taking the testimony.   A judgment was rendered for the defendant, and the plaintiff appealed.   Our predecessors affirmed the judgment, but for a different reason from that given by the lower court in excluding the deposition. A *procedendo* and a new trial were awarded under the Act of 1830, although the appellee contended that there was no merit in the plaintiff's claim.   *Beall* v. *Beall*, 7 Gill, 233, was an action of ejectment.   A prayer offered by the plaintiffs was rejected by a divided court, a judgment was entered for the defendant, and the plaintiff appealed.   Our predecessors held that the prayer was properly rejected and affirmed the judgment, "but as it does not appear to this Court that the substantial merits of this case are determined by the judgment," the case will be remanded with *procedendo* under the Act of 1830.   In *State v. Balt. & O. R. R. Co.*, 48 Md. 49.

there was an action of debt to recover taxes, and a judgment
for the defendant was entered, from which the State ap-
pealed. This Court held that there was error in sustaining
exceptions to certain interrogatories which the plaintiff filed
—being in the nature of a bill of discovery, but it was there
said, "It is plain, however, that the State was entitled to re-
cover in this suit, and even were we obliged to affirm the
judgment below, we should have remanded the case for a new
trial under section 16 (now 22), article 5 of the Code."

There are many cases where the judgment below was ren-
dered on a demurrer and affirmed by this Court, but re-
manded so that after the necessary amendments they could
be tried upon their merits, most of them being cited in the
notes to section 22 of article 5 of the Annotated Code. In
*Milske* v. *Steiner Mantel Co.,* 103 Md. 235, the lower court
sustained demurrers to the several counts of the declaration,
and *the plaintiff refused to amend.* JUDGE BURKE, after
stating that we found no error in sustaining the demurrers,
and entering judgment for the defendant, said on page 251:
"But if the facts set out in the record be true, the plaintiff
has substantial grounds of action against the defendant, and
it would be a reproach to the administration of justice if he
were denied the right to have his case heard upon its merits,
merely because of errors in the pleading, or mistake of
judgment in the pleader in not making the proper amend-
ments. In order to avoid such injustice, it is provided by
article 5, section 22, Code 1904, as follows:"—then setting
out the language of the section. He quoted from *Creager* v
*Hooper,* 83 Md. 504: "This Court is vested with the dis-
cretionary power when in its judgment the ends of justice
will be promoted, to remand a cause to the lower court for
trial upon its merits." See also *Tyng & Co.* v. *Woodward,*
121 Md. 422, 439.

The appellant relied very much on what was said in
*Archer* v. *State,* 74 Md. 410, 432, in passing on the motion
made to remand the cause for a new trial. The opinion in

that case did in some places speak as if it was a question of
power in the Court, and did refuse to remand the case be-
cause the State had made a mistake in claiming that the
first bond was only liable for defalcations up to November
18th, 1889, instead of to the end of the second term of Mr.
Archer. That case differed from this in several important
particulars. In the first place the judgment had been af-
firmed, before the motion was made, and it was in the nature
of a motion for a new trial. Then in Archer's case the de-
fendants had taken an appeal, and the judgment had been
affirmed in favor of the plaintiff, which had also taken an
appeal on the rejection of proffered testimony, but JUDGE
BRYAN said that, "the State's appeal from the ruling had
no connection with the merits of the motion." There was
also another suit against the sureties on the second bond,
which had been decided in favor of the defendants, as Mr.
Archer had no authority at that time to enter into a bond.
The defendants were sureties on the bond, and the Court
was dealing with the rights of sureties who may have been,
and probably were, prejudiced by the neglect of the State
in not seeing that the treasurer-elect had qualified under his
second appointment within the time required by the Consti-
tution. JUDGE BRYAN concluded by saying that when "the
sureties executed their official bond, they had a most just
and reasonable expectation that their liability would not ex-
tend beyond the period of two years, with the addition of
the short time allowed by law for the qualification of a suc-
cessor. Circumstances, which are well known, continued
their liability for two years longer and this occurred without
any default on their part. The law operated against them
with great severity, but it was enforced. On the present
occasion it operates to protect them, and it will likewise be
enforced now." It may be said that the appellant's connec-
tion with this matter was as surety, but not so far as the
West Construction Company was concerned. The casualty
company's liability to the construction company was as prin-

cipal, under the contract made between them, and if it is required to pay this claim or any part of it, it is only because it employed the construction company to do this work for it. We might show other distinctions between the two cases, but that is really not material. If the Court had the power to do what it did do in this case, as we think it undoubtedly had, it was in the exercise of what appeared to it to be the right thing to do, and even if it was mistaken in that, it would not be just to the other parties to the contract to now disturb its judgment.

We have thus far considered the question, and that, too, at great length, as if the judgment of this court had simply been "judgment affirmed, and a new trial awarded," or something near the language of section 22 of article 5, but it could do the appellant no possible harm to have a new suit, instead of merely a new trial of the original one. We did not say in terms that a new suit could be brought, but only that the affirmance should be without prejudice to any claim which the plaintiff may be entitled to assert for the work specifically referred to. If the defendant had any objection to the allowance of the two sums included in the former judgment, or either of them, it might have made some difference, but it did not complain of that judgment at the former trial, and in its brief in this case says that it admitted that the sum of $1,307.25 was due the plaintiff, for which judgment was entered. It would be pressing technicalities to an unwarranted extent to say that this Court had the power, as it undoubtedly had, to affirm and award a new trial for the purpose of allowing the plaintiff to assert its claim in reference to the deficiencies and imperfections, but did not have the power to do so in the way it did, which was equivalent to saying that the plaintiff should not be barred by the affirmance.

The only case outside of this State which the appellant cited, supposed to bear directly upon the question in this case, was that of *Prondzinski* v. *Garbutt,* reported in 86 N. W. 969 (10 N. D. 300). Apparently it was intended to refer to the

same case in 83 N. W. 23 (9 N. D. 243), and in the latter
case the Supreme Court of North Dakota explained the
former one in a way which shows that it could not affect this
one.   Without stopping to discuss them, in 4 C. J. 1112,
1113, 1147 and 1148 many cases are cited, some of them as
to the effect of an appellate court affirming without prejudice.
We are of the opinion that the lower court was right in sus-
taining the demurrer to the fourth, fifth, and amended fifth
pleas, and in its rulings on the thirteenth and fourteenth bills
of exception.

In the contract between the West Construction Company
and the casualty company, the former does "agree to perform
any and all work now remaining unfinished under said con-
tract between Opperman and the City of Harrisburg," but
it is distinctly provided "that the party of the first part will
perform the work to be done upon the following unit prices,"
they being then set out.   The consideration for the agreement
was the payment "of the balance of the unpaid portion of the
contract price now remaining in the hands of the City of Har-
risburg, either due or hereafter becoming due and * * * the
difference between the payments to be made by the City of
Harrisburg, based upon the unit price contracted for by said
Opperman, and the unit prices agreed to by the party of the
first part." There is no provision in the contract for the pay-
ment, or the performance of any work, except upon the unit
prices. Before it was entered into Mr. West, the president of
the construction company, after getting the drawings and some
preliminary information, visited the resident engineer at Har-
risburg, Mr. Justin, went over the general details of the work
with him in his office and they then went out on the work.
He said they went to the lower end, walked over the entire
stretch of it, a little more than three miles, and Mr. Justin
called his attention "to various conditions of the work, vari-
ous features of the work as to what Opperman had done, some
things he had been paid for and not entirely finished." Jus-
tin called his atention to the 24-foot section, which had been

partly completed and the side walls up, other parts simply
had the wooden forms, the side walls, and they had not been
poured.   He said that Mr. Justin pointed out various details,
including defective blocks, some of the embankments, and
he observed that the place was filled with mud, old bed
springs, rubbish of all kinds, which Mr. Justin said would
have to be removed and cleaned out, and repairs to the slabs
would have to be made; that some of them were out of align-
ment, warped out of place, some were broken and marked
with rain, and there were other deficiencies and imperfections
pointed out to him for some of which he is now seeking to
recover.   After the inspection that he made with Mr. Justin,
Mr. West went back to Baltimore and submitted his proposal
to the casualty company.   It is therefore clear that the con-
struction company had every opportunity to see, and did see
what could be seen, and that Mr. Justin called Mr. West's
attention to most of the things they are charging for now be-
yond the unit prices.   The officers of the company knew, or
must be presumed to have known, of the troubles they would
have to contend with, but there is nothing whatever in the
agreement they entered into providing for payment of any-
thing that would not be included in the unit prices mentioned
in the contract.   They knew as well before the contract was
entered into as they did afterwards, that mud and debris
would have to be contended with and removed, that slabs
which were broken and out of alignment would have to be
replaced, and presumably they fixed their prices accordingly.
They knew also how their compensation was to be paid, as
we have set out above.   The fact is, the construction com-
pany did not claim that it was to be paid for all such work
as they are now claiming—or at least to such an amount, but
their claim was that the company was to be paid the amount
of retained percentage which was held back from Opperman,
and contended that it was to have that in addition to what
the casualty company received from the city and was to pay
them the difference between the unit prices in the two con-

tracts. When the other case was before us the Court said: "The work defectively done by the preceding contractor was unfinished work within the terms of the appellant's agreement. For such work the appellant was undoubtedly entitled to be paid, *but only at the unit price rate of compensation which the contract defines as applicable to every feature of the work for which it makes provision.*"

It could scarcely be imagined that the officers of two companies such as the appellant and the appellee, would deliberately make a contract of this character and leave out such things as they knew would have to be done—especially when those things had just been brought to their attention, even if they might have had no reason before to assume that there would be more or less to do in correcting what Opperman had defectively done. It is not surprising that the construction company had no such idea when it brought the first suit, although it did believe that it was to be compensated by the retained percentage, which, in passing it may be said, amounted to about one-third less than the judgment it has recovered in this case.

If, as it was argued, a number of the items in the bill of particulars were not included in the unit price, and hence were extras not provided for in the contract, the appellee would have the statute of limitations to contend with. Many, if not most of those things, would have been required to be done in an early part of the work, and if they are not covered by the contract, and could be recovered as extras, if not barred, there is nothing in the contract to postpone payment of them until fifteen days after the whole job was completed, as the appellee contends, in discussing the statute of limitations, was the time for payment under the contract.

Without going through all the exceptions at length, one by one, we will refer to the bill of particulars for convenience. The item as to cutting out the condemned blocks, those for completing the intercepter, including the pay for the engineer, night fireman, boiler hire, pump hire and coal cannot

be allowed; that for excavating mud should only have been 85 cents a cubic yard, instead of $1.50; clearing out the mud from 360 feet of pipe and all the items under 3 must be rejected. The next item (4) seems to be the same unit charge as in the contract. There were, therefore, errors in the first, second, third, fourth and fifth exceptions. We can see no reason for the objection to the question in the sixth nor in the seventh exception. We find no error in the eighth, and the ninth is not material. We see no error in the tenth, eleventh or twelfth. What was in there was really helpful to the appellant, under the view we take of the case. From what we have already said, it will be seen that we find no error in the thirteenth and fourteenth.

The defendant's first prayer was properly rejected. Several reasons might be given, but it is sufficient to say it entirely disregards the time of payment. There was some evidence in the case applicable to the common counts, although at least some of it was improperly admitted, but the prayer was properly rejected by reason of what we said as to unit prices. The third and fourth were also properly rejected. There was some evidence as to the sloping and grading of the embankment, the work on which was charged for at the unit price. Without saying more, what we have just said as to sloping and grading embankments being included in the fifth, it was properly rejected, as it was not proper to consider that item. As we have said, the items named in the sixth prayer ought not to have been allowed; it is not necessary to say more on that prayer. The seventh was properly rejected. The eighth ignored the time of payment and was also properly rejected. The ninth ought to have been granted.

It follows that the judgment must be reversed.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*