BROSIUS DEVELOPMENT CORP., ET AL. *v.*
CITY OF HAGERSTOWN

[No. 139, September Term, 1964.]

*Decided February 3, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-BURY and BARNES, JJ., and DIGGES, J., Chief Judge of the Seventh Judicial Court, specially assigned.

*K. J. Mackley* for appellants.

*Norman Broadwater* and *Elwood E. Hauver,* with whom was *Edward Oswald, Jr.,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellants, (who were the defendants below), Brosius Development Corporation and Brosius Homes of Hagerstown, Inc. (closely affiliated corporations, hereinafter referred to as "Brosius") were the owners and developers of a subdivision known as Greystone Manor in the north central part of the City of Hagerstown, ("the City"), the appellee. The City and Brosius agreed that the City would install the sewers in Greystone Manor, toward the expense of which Brosius paid the City $12,000. The agreement provided that "Rough grading shall be accomplished by and paid for by the property owner or developer."

Brosius had Morton Thomas & Associates, its engineering consultant, prepare profile and street layout drawings for certain streets in Greystone Manor. One of these streets was Outer Drive. In 1958, Brosius graded the streets in the development, including Outer Drive. Brosius furnished the Thomas plans for the installation of sewers in the development. The sewer contract had been awarded by the City to Hetzer, Inc., the low bidder and the sewer work was commenced in the Spring of 1959.

On July 28, 1959, Hetzer, Inc. submitted a bill to the City for work performed under its contract which showed extra excavation of 989 cubic yards of dirt from Outer Drive. The unit price in the Hetzer contract for excavation of this type was $4.80 per cubic yard, so that this extra amounted to $4,747.20. The City paid the Hetzer bill and, on July 30, 1959, submitted a bill to Brosius for $4,747.20 covering this extra excavation.

Brosius, having indicated some objections to this charge in

a letter of August 3, 1959 to the City Engineer, had meetings with its representatives and the City representatives and in August, 1959 employed J. Harold Seibert, Engineer and County Surveyor, to check the area, and the computations of the City in regard to the excavation, as well as to determine the amount of dirt excavated. Mr. Seibert, by a letter dated September 23, 1959, (with a copy to the City Engineer) reported to Brosius that on August 19, 1959 he had checked the elevations and stated in detail the man hole number, the actual elevation, the grade and the difference between the actual elevation and the grade. His conclusions were as follows:

> "From the above results, I am sure that the City Engineers Office used the same datum used by your Engineer when the original profiles were run and that the difference between the estimated quantity of excavation according to your profiles and the actual excavation according to profiles run by the City cannot be blamed on the use of different bench marks.
>
> "I then spot checked the computations through several sections and found the method used to be correct, and the actual computations were likewise correct.
>
> "Based on my review of the methods used, and an actual inspection of the ground, I am of the opinion that the profiles furnished by the City represent a reasonable picture of the actual conditions found, and that their estimate of extra excavation between the established street sub-grade and the actual ground line is reasonably correct."

Relying on the Seibert Report, the President of Brosius went to see Mr. Hetzer, President of Hetzer, Inc., the Sewer Contractor, and asked him to accept less than $4.80 per cubic yard for the excavation, but Mr. Hetzer refused to do this.

The City pressed for payment of the $4,747.20 and on November 17, 1959, Brosius wrote the City Engineer as follows:

> "Mr. Reynolds told me of your conversation with him of yesterday, inquiring as to when we would pay

the extra charge made us by your department for additional depth in the sewer ditch.

"As we have discussed with you on several occasions in the past, this was totally unexpected expense to us. As far as we were concerned, the streets had been graded to the required profile. So far as we can determine, no responsible person in our organization was notified that the street grades were higher than planned, except in the Haven Road area where we promptly corrected the grade before the sewer ditching was done. Had we been properly notified through Mr. Davis or Mr. Reynolds, or myself, the grading would have been completed for an expense of $500.00 or $600.00.

"The money involved in land development is substantial, as you are aware. This being the case, we must plan well in advance for our budgeted expenses. We must also make provision for all expense in the sale price of our lots. Since we had no advance notice nor expectation of this cost, it was not budgeted and no plans were made for it in our capital program. We must, therefore, meet it as an unplanned expense.

"On this basis, we hope to be able to take care of the bill, at least to a substantial degree, by the end of this year."

In his testimony, the President of Brosius stated that he wrote the letter of November 17, 1959 because Brosius "had a continuing relationship with the City which we had to maintain and * * * you don't fight City Hall." In response to a question by the trial court, he stated: "Yes sir, once I said, yes, we had to pay it, and I was explaining why we couldn't pay it that day or that month, but would pay it some months later." He also admitted that after writing the letter of November 17th, he had "a change of heart because many things have developed since then."

The City did not institute its action to recover the $4,747.20 until July 23, 1962. Brosius pleaded the general issue pleas and a plea of the three year Statute of Limitations. It also filed a

"Plea of Recoupment" in two counts. In Count I, Brosius alleged defective work in installing the sewer line, resulting in damage to the plumbing work installed by Brosius, inconvenience to purchasers of homes in the development and injury to the reputation and good will of Brosius. In Count II, Brosius alleged that after having commenced preparations for paving Outer Drive, it discovered certain alleged errors in the grade elevations shown in the drawings, so that it had to place dirt in areas in which it had previously removed it, causing it loss and damage.

The case was tried in the lower court before Judge McLaughlin, sitting without a jury. He filed a Memorandum Opinion finding the principal facts in favor of the City and entered judgment for the City for $4,747.20. He allowed Brosius two items of $116.76 and $21.60 for sewer errors, entered judgment for Brosius on its counter-claim, for $138.36 and required Brosius to pay all the costs. He did not allow the items of $443.20 paid by Brosius to Bester and Long, the paving contractor, for adding fill on Outer Drive in 1962, and $168.00 for the value of the use of the equipment of Brosius in this filling operation.

The principal issue in this case is whether the City's claim is barred by the Statute of Limitations. Other issues are whether the trial judge was clearly in error (1) in finding that the subgrade on Outer Drive was too high when sewer trenching commenced and (2) in failing to allow for the items amounting to $611.20 for adding fill in 1962 and whether the City had properly mitigated the damages when it discovered the subgrade on Outer Drive was too high.

The trial court was of the opinion that the City's claim was not barred by the three year Statute of Limitations for two reasons: (1) the cause of action did not accrue until Hetzer, Inc. submitted its bill to the City on July 28, 1959, or less than three years prior to the institution of suit on July 23, 1962 and (2) in any event, the letter of November 17, 1959 acknowledged the indebtedness and tolled the Statute of Limitations.

Brosius makes the point that inasmuch as the dirt was removed by Hetzer prior to July 23, 1959, the cause of action accrued at the time of such removal and more than three years prior to the institution of suit as the breach of the contract of Brosius was then established, and the cause of action of the City

is based upon breach of duty rather than upon the consequential damages.

We do not find it necessary to decide in this case when the City's cause of action accrued, because, assuming for the argument only that it accrued prior to July 23, 1959, we are of the opinion that the letter of November 17, 1959 was a clear acknowledgment of the debt and tolled the Statute of Limitations.

The Maryland law in regard to the sufficiency of the acknowledgment of a subsisting debt to toll the Statute of Limitations was summarized by Chief Judge Brune, speaking for this Court in *Doughty v. Bayne,* 222 Md. 361, 160 A. 2d 609 (1960). He stated:

> "In Maryland, unlike most other states, an acknowledgement of a subsisting debt, unaccompanied by any qualification or declaration which, if true, would exempt a defendant from a moral obligation to pay, or such an acknowledgment accompanied by a refusal to pay, coupled with an excuse for not paying which itself furnishes no real objection to the payment of the debt, is sufficient to remove the bar of the statute. *Oliver v. Gray,* supra, at 217; *Weil v. Lambert,* 183 Md. 233, 244, 37 A. 2d 312; *Gill v. Donovan,* 96 Md. 518, 523, 54 A. 117; *Felty v. Young,* 18 Md. 163, 167; *Mitchell v. Sellman,* 5 Md. 376, 387; *Ellicott v. Nichols,* 7 Gill 85, 98, 54 C.J.S. *Limitations of Actions* § 313."
> \* \* \*
> "In determining the effect of these statements we must also be mindful that the acknowledgment must be a clear, distinct, and unqualified admission. *Crawford v. Richards,* 197 Md. 289, 293, 79 A. 2d 143, and cases cited therein. The evidence of the acknowledgment must also be considered in its entirety, and the creditor cannot accept the admission and reject any qualification that might make the acknowledgment ineffective. *Higdon v. Stewart,* 17 Md. 105, 111-12; *Oliver v. Gray,* supra, at 219."

For an interesting consideration of the *Doughty* case, see a case note by Ronald M. Naditch entitled: "Sufficient Acknowl-

edgment of Indebtedness to Remove Bar of Statute of Limitations," 21 Md. L. Rev. 166.

In our opinion, the trial judge could quite properly find (as he did) from a consideration of the whole letter of November 17th, that Brosius acknowledged the existing debt and agreed to pay it without any condition.

The letter was written *after* the receipt by Brosius of the Seibert Report, on which Brosius relied, indicating that the City was correct in its position. It was written after demand for payment of the debt had been made upon Mr. Reynolds, the Superintendent of Brosius on the job. Brosius does state in the letter that there is a hardship on it to pay an expense which had not been budgeted and does indicate that if promptly notified of the condition by the City it would have been completed by Brosius for an expense of $500.00 or $600.00. There is, however, no condition stated *in regard to payment of the entire amount claimed by the City*. Brosius states "We *must*, therefore, *meet it* as an unplanned expense." (Emphasis supplied). This factual situation is not like that in *Higdon v. Stewart, supra,* where only a part of the claim was acknowledged, and is not like that in *Crawford v. Richards, supra,* in which payment was conditioned on a compromise which never came to pass.

If there were any doubt about the sufficiency of the acknowledgment of the debt in the letter of November 17th (and we believe there is no such doubt), the admissions in the testimony of J. William Brosius, Jr., President of Brosius, above set out, would remove any such possible doubt in regard to the intention of Brosius to acknowledge the entire claim of the City. It is apparent that a subsequent "change of heart" on the part of Brosius cannot impair the effectiveness of the acknowledgment of the debt to the City. We conclude, therefore, that the City's claim for $4,747.20 was not barred by the Statute of Limitations.

The next two contentions of Brosius—that the City failed to mitigate the damages and that, in fact, the subgrade of Outer Drive was not too high in 1959—may be considered together. These issues turn on the evaluation of the testimony and, under Maryland Rule 886 a, we will not set aside the judgment

of the lower court on the evidence "unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

In the Memorandum Opinion of the trial court, great weight was given to the testimony of Mr. Seibert, County Surveyor, who was employed *by Brosius* to investigate and report on the City's claim. The substantial part of his report in his letter of September 23, 1959 has already been quoted and need not be repeated. In summary, he indicated that the City had used the proper method (using the same datum used by the Brosius' Engineer when the original profiles were run), its computations were correct, the profiles used by the City gave a reasonable picture of the actual conditions and the City's estimate of the actual excavation was reasonably correct.

As Brosius relied upon the opinion and findings of Mr. Seibert and on his report of September 23rd, it can hardly complain that the trial court also did this. This evidence establishes that the subgrade of Outer Drive was, in fact, too high, and that the City's estimates were correct.

Brosius sought to impair the opinion and report of Mr. Seibert in regard to conditions existing at Outer Drive in 1959 by photographs and testimony tending to show that for part of Outer Drive in 1962 the subgrade was *too low* and Brosius had to incur expense in filling part of the subgrade of Outer Drive and further that there had been no appreciable change in conditions at the location in question as a result of weather, packing of the earth and other matters which might account for the alleged absence of fill at the location in question. It is apparent from the record that the trial court was not impressed with this testimony. On the contrary, the trial court placed reliance upon the Seibert opinion and report and the reliance of Brosius on that opinion and report.

After the work was under way, Mr. Hovermill, the City Engineer, notified Mr. Reynolds, as a representative of Brosius, that the subgrade was too high. There is no evidence that Brosius demanded that Hetzer, Inc. discontinue the excavation, and permit Brosius to do the remaining work. Although Brosius indicates in its letter of November 17th that it could have done the work cheaper than the unit price of $4.80 per cubic yard,

it nevertheless acknowledged the debt of $4,747.20 to the City *in full.* Then too, the testimony of William L. Harper, an engineer, who had been employed in the Engineering Department of the City for 33 years, testified that, in his opinion, $4.80 per cubic yard was a fair price for this excavation.

In view of the evidence it cannot be said that the trial court was clearly erroneous in regard to the alleged failure to mitigate the damages or that the subgrade of Outer Drive was, in fact, not too high.

We are of the opinion that the determination of the trial court not to allow the two items of $443.20 and $168.00, a total of $611.20, asserted in Count II of the "Plea of Recoupment," was also not clearly erroneous. The issue was definitely before the trial court and was referred to by the trial court in its Memorandum Opinion. Although there was no specific reference to those items in the Memorandum Opinion, it appears that as to the remaining items in the counter-claim of Brosius, the trial court was of the opinion that the proof was unsatisfactory and these items were rejected. Two items in the counterclaim were allowed, i.e., $116.76 and $21.60, a total of $138.36, for which judgment was entered for Brosius on its counterclaim. The other items were rejected. As already indicated the acceptance of the Seibert testimony and report by the trial court established, as a matter of fact, that in 1959 the subgrade of Outer Drive was too high, the excess fill was properly removed at a fair and reasonable price and Brosius was liable to the City for the $4747.20. There was no proof that *subsequent* to 1959, *the City* caused any *additional removal of fill* on Outer Drive. The burden of proof was on Brosius to establish the items of its counterclaim, or "recoupment" against the City. See *Parker v. Morgan,* 170 Md. 7, 38-39, 183 A. 224, (1936). The evidence justified a holding that it had failed to establish this claim against the City. We cannot hold that its rejection by the trial court was clearly erroneous.

*Judgments affirmed; appellants to pay costs.*