# MAYOR AND COUNCIL OF FEDERALSBURG, MARYLAND *v.* ALLIED CONTRACTORS, INC.

[No. 156, September Term, 1974.]

*Decided June 3, 1975.*

152

*Motion for rehearing filed July 3, 1975; denied July 16, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Starke Matthew Evans* for appellant.

*J. Owen Wise* for appellee.

DIGGES, J., delivered the opinion of the Court.

The appellee, Allied Contractors, Inc., initiated this suit in the Circuit Court for Caroline County against the appellant, the Mayor and Council of Federalsburg, Maryland, a municipal corporation, for moneys Allied claims it is owed by the town under a construction contract. The case was removed to the Circuit Court for Queen Anne's County where, in a jury trial, the contractor was awarded damages in the amount of $74,022.66. From the judgment which was entered on that verdict, Federalsburg appeals.

The wellspring of this conflict is the contract which was entered into by Federalsburg and Allied on 28 July 1967. Under this agreement, the appellee was to underpin and otherwise reinforce as well as lengthen the piers of a highway bridge and the nearby railroad trestle, both of which span the Marshyhope Creek within the town limits. In addition, as part of the construction project, this creek, which is frequently referred to as the northwest fork of the Nanticoke River, was to be deepened, its channel widened, and its slopes protected so as to prevent erosion in the vicinity of these two parallel bridges. This undertaking, the initial stage of an extensive flood control program being pursued in cooperation with other governmental agencies,[1] began in September of 1967 and was completed to Federalsburg's satisfaction one year later, on 17 September 1968.

The project contractor in this suit asserts that it is due compensation over and above the base price established in the contract because, while carrying out its obligations to the appellant, Allied provided, at Federalsburg's request, additional labor and services for the town including more guniting (the pneumatic application of mortar) of the highway bridge's first pier than was originally contemplated

---

1. By virtue of a separate agreement, Federalsburg was to be reimbursed by the Soil Conservation Service, an agency of the United States Department of Agriculture, for most of the expenditures which the town assumed under the contract with Allied; apparently, the Maryland State Highway Administration, under yet another agreement, was to repay Federalsburg for certain highway bridge repairs done by Allied for the town.

by the agreement. Furthermore, Allied seeks to be reimbursed for its costs which it alleges resulted from the unjustifiable issuance of stop work orders by the town's contracting officer. In submitting this latter claim, Allied urges that it is entitled to remuneration for two work stoppages, the first in 1967 and the second in 1968, which were directed by Federalsburg's contracting officer not for Allied's benefit but to accommodate the town. Following receipt by that contracting officer of these additional compensation demands, considerable correspondence and verbal discussions ensued between the contracting parties but, throughout these communications, the appellant constantly denied having a financial obligation for any of them.[2] Eventually, however, when it became painfully obvious to Allied that continued "negotiations" would not bear fruit, the contractor instituted this suit on 2 March 1972.

Federalsburg responded to Allied's amended declaration by filing a special plea of limitations along with its pro forma general denial. After testimony was taken at a pre-trial hearing confined to the limitations issue,[3] Judge Turner ruled that the suit was not barred by the statute of limitations.

On appeal, in seeking a reversal of the judgment, the principal contention of Federalsburg, and the only one which we find to have any substance, is that the trial judge erred when he ruled that each of the unpaid claims for additional compensation was not barred by limitations. In addition, the appellant asserts that the trial judge committed prejudicial error when he: (i) made certain comments concerning the evidence in the presence of the jury; (ii) allowed "the jury to speculate and consider all aspects of plaintiff's [(Allied's)]

---

**2.** Likewise, when the State Highway Department and the Soil Conservation Service were consulted as to their responsibility for contribution, each balked at the notion that it should, even partially, compensate Allied.

**3.** Apparently with agreement of the parties, the questions raised by the limitations plea were submitted, as a pre-trial matter, to Judge Turner for decision. For a discussion of the proper procedure when there is no such agreement and a factual dispute exists see W., B. & A. Elec. R.R. Co. v. Moss, 130 Md. 198, 207, 100 A. 86 (1917).

claim under count number one of said declaration after the evidence clearly established the existence of a written contract as alleged by plaintiff in counts two, three, and four" ; and (iii) concluded that there was "sufficient evidence to uphold a finding of a new benefit to the defendant [(Federalsburg)] in the amount of $74,022.66 as required to be found by the trial court's instructions to the jury." We will consider and dispose of each of these arguments seriatim.

Three distinct questions comprise the limitations issue presented by this case. These are: whether the contract was under seal so as to create a specialty and thus make the applicable period of limitations twelve years, under § 5-102 (a) (5) of the Courts and Judicial Proceedings Article of the Maryland Code (1974), rather than the three-year period for simple contracts, under § 5-101 of that Article; on what date did the statutory period, as it pertains to each claimed item of damage, begin to run; and whether, once the period commenced, there were subsequent occurrences which tolled its running?

The only evidence, Allied concedes, to support its assertion that the contract in this case is a specialty is that when the document was signed on behalf of Allied by its vice-president, he also impressed the corporate seal on the instrument. The law in Maryland, as has been recently and fully discussed by this Court in *Levin v. Friedman,* 271 Md. 438, 317 A. 2d 831 (1974) and *Gildenhorn v. Columbia R. E. Title,* 271 Md. 387, 317 A. 2d 836 (1974), requires more than the mere affixing of the corporate seal to transform a would-be simple contract into one under seal. Indeed, as is made clear by those two cases and *General Petroleum Corp. v. Seaboard Terminals Corp.,* 23 F. Supp. 137 (D. Md. 1938), if a corporate seal is impressed on an agreement it will remain a simple contract unless either the body of the contract itself indicates that the parties intended to establish an agreement under seal, or sufficient extrinsic evidence, in the nature of "how and when and under what circumstances the corporate seal was affixed," *General Petroleum Corp. v. Seaboard Terminals Corp., supra* at 139,

establishes that the parties desired to create a specialty. In *Seaboard* Judge Chesnut in discussing the Maryland law applicable to seals stated:

> "If the contract is signed by an *individual* opposite and in obvious relation to a legally sufficient seal, the instrument will be taken as a sealed document, where there is nothing on the face of the paper to indicate the contrary even though there be no reference to the seal in the wording of the paper. 'A recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract.' . . . . 'A promisor who delivers a written promise to which a seal has been previously affixed or impressed with apparent reference to his signature, thereby adopts the seal.' . . .
>
> "But with respect to a contract executed by a *corporation*, the mere presence of its seal on the paper without any other reference therein to the seal, does not *necessarily* make the contract a specialty, because it is possible the corporate seal was impressed merely as prima facie evidence of corporate authority for the execution of the paper; and in that case extrinsic evidence is admissible to show whether the use of the seal was intended to make the paper a specialty or merely as evidence of its authorized execution, or that it was in fact used without authority." (citations omitted). 23 F. Supp. at 140-41.

Moreover, even though a contract need not always have as many separate seals as there are signatories to it, since in some circumstances a rebuttable presumption of a party's adoption as his own of another party's seal can be established (*e.g.*, such as when the instrument purports on its face to be sealed by all the parties signing it), *Stabler v. Cowman*, 7 G. & J. 284 (1835); *Rockwell v. Capital Traction Co.*, 25 U. S. App. 98 (D.C. Cir. 1905); *McNulty v. Medical Service of D.C., Inc.*, 176 A. 2d 783 (Mun.Ct. D.C. 1962),

ordinarily when a seal is attached to the signature of one of the parties but not to that of the other party, the contract as to the latter is a simple contract while as to the former it is a contract under seal. *Pearl Hominy Co. v. Linthicum*, 112 Md. 27, 75 A. 737 (1910); *State, Use of Gilkeson v. Humbird*, 54 Md. 327 (1880). In this case it is undisputed that the only seal attached to this document is Allied's corporate seal; no reference to a seal is made in the body of the instrument; and no extrinsic evidence was presented to prove that the town, through adoption of the other party's seal or otherwise, intended the contract, at least as to itself, to operate as a specialty. Thus, as the contract in this case is a simple one, for this suit to have been timely against the appellant, if not the appellee, it had to have been filed within the three-year period of limitations mandated by § 5-101 of the Courts Article.

Having concluded that three years is the applicable limitations period in this instance, we now must determine when that statutory period commenced to run. In contract cases, the general rule is that the period of limitations begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforcible. *Cotham and Maldonado v. Board*, 260 Md. 556, 273 A. 2d 115 (1971); *Whitcomb v. Horman*, 244 Md. 431, 224 A. 2d 120 (1966); *Fisher v. Medwedeff*, 184 Md. 167, 40 A. 2d 360 (1944); *Vincent v. Palmer*, 179 Md. 365, 19 A. 2d 183 (1941). Normally, unless the contract provides otherwise, a cause of action for extra labor and services accrues when the work is done or services provided. *Md. Cas. Co. v. West. Constr. Co.*, 139 Md. 171, 114 A. 890 (1921); *Dempsey v. McNabb*, 73 Md. 433, 21 A. 378 (1891). But it is also true that when the contract requires some action, such as an accounting, a billing or a hearing, by one or both of the parties before the obligation for payment fully blossoms, then the performance of that activity is "a condition precedent to recovery of such payments, absent bad faith or collusion." *Laurel Race Course, Inc. v. Regal Constr.*, 274 Md. 142, 333 A. 2d 319, 325 (1975); *Vincent v. Palmer, supra; cf. Henry's Drive-In v. Pappas*, 264 Md. 422, 287 A. 2d 35 (1972).

A close examination of this Federalsburg-Allied contract reveals that it contains a provision, Clause 6, which is analogous to one requiring an accounting before payment becomes due. That provision reads:

"6. CLAIMS

Any claim by the Contractor arising by virtue of this contract which is not disposed of by agreement shall be submitted in writing, together with any written and oral evidence in support thereof, to the Contracting Officer for decision. Before making a decision the Contracting Officer shall notify the . Contractor that any additional written and/or oral evidence in support of the claim may be presented to the Contracting Officer within 30 days from receipt by the Contractor of such notification, or within such further period of time as may be granted by the Contracting Officer. The Contracting Officer shall make his decision in writing and mail or otherwise furnish a signed copy thereof to the Contractor. Pending the decision of the Contracting Officer the Contractor shall proceed diligently with the performance of this contract."

Under this clause of the contract, in order for Federalsburg's denial of a claim to operate as its final decision so as to commence the running of limitations, two prerequisites must be met — the town must grant Allied at least thirty days in order to further support its claim; and after the expiration of this period, it must "furnish" to Allied a signed copy of the contracting officer's decision. Thus, it is upon actual compliance with the appellant's contractual right of review, inaction by Federalsburg resulting from bad faith or fraud, or quiescence for such duration set in such circumstances as to constitute estoppel or waiver, that Allied's cause of action for these claims becomes both vested and enforceable. Since inaction and quiescence are not alleged to be present here we will confine our analysis in this case to an evaluation of the appellant's compliance with Clause 6.

In this regard, Federalsburg asserts that its contracting officer finally rejected each of Allied's claims in compliance with Clause 6 more than three years before Allied's suit, and thus the entire action was barred by limitations.

In considering the appellant's argument, as it pertains to the extras, the town asserts that the procedure it employed in refusing Allied's request for remuneration for the work was to allow Allied at least thirty days to supply supportive information and then to furnish the appellee with a final rejection letter which specifically denoted that the denial constituted "the decision of the Contracting Officer pursuant to Clause 6 of the General Provisions of the contract." Although this letter was dated 25 February 1969, it was determined by Judge Turner that Allied did not receive it until 4 March of that year; this raises the question of whether, under the terms of this contract, the statute commenced to run on the date the contracting officer's decision was sent or on the date it was received — if on the former, filing suit on 2 March 1972 would not be timely; if on the latter, the filing of suit was timely by two days. This quandary is easier asked than answered because of the dearth of authority discussing it. We find no Maryland case on point and, in fact, the only case we were able to uncover is *Campanella & Cardi Constr. Co. v. Commonwealth*, 351 Mass. 184, 217 N.E.2d 925 (1966), in which the Supreme Judicial Court of Massachusetts held, upon facts somewhat the same as those in the instant case (although we cannot say definitely because the provisions of the contract there are not set out in full), that the statute of limitations began to run on the date the contractor is *sent* the "semifinal estimate" rather than when he *receives* it. Assuming that the contract in *Campanella* contained a provision substantially similar to Clause 6 of the Federalsburg-Allied contract, with due respect to the Massachusetts court, we find its reasoning not to be persuasive as it pertains to this case because Clause 6 obligates the contracting officer "to mail or otherwise furnish a signed copy" of his decision to Allied, thus according the appellee the right to *receive* such communication before it becomes effective for purposes of

beginning the running of the three-year time period. Furthermore, a holding that the breach occurred on the date it was sent so as to commence the running of limitations at that point would, in effect, deprive Allied of the full statutory three-year period within which to institute its suit because the contractor would not be aware of the town's final denial of its claim until the letter was received, however long that might be. In the instant case, the difference would be only a matter of days, but if the letter were delayed in transit for a substantial time, an occurrence which is all too frequent nowadays, the time available to bring suit could be much less than the three years established by § 5-101 of the Courts Article. Consequently, Allied's filing of suit for the extras on 2 March 1972 was timely, as the three-year period began to run on the day the rejection was received, 4 March 1969, and recovery for this expense item is not barred by limitations.

As to the 1968 delay claim, the appellant asserts that it fully complied with Clause 6 in much the same way as it did the extras claim — allowing Allied an ample grace period to supply supplementary evidence of the claim; dispatching a final formal rejection letter utilizing the identical language as that used for the extras. There is no dispute that the rejection communique was sent on 21 October 1968, following the required grace period, and was received in due course shortly thereafter; consequently when Allied filed suit for the 1968 delay claim on 2 March 1972, the three-year statute of limitations as to the obligation for this expense had already lapsed, unless a tolling of its running occurred. To determine if a tolling has ever taken place so as to procedurally permit this claim we must ask whether subsequent actions of the appellant, such as an acknowledgment of the debt, would serve to arrest, suspend or begin anew the effect of the statute. This Court encapsulated the law in this area in *Doughty v. Bayne*, 222 Md. 361, 365 160 A. 2d 609 (1960):

"In determining the effect of these statements we must also be mindful that the acknowledgment

must be a clear, distinct, and unqualified admission. [(citations omitted)] The evidence of the acknowledgment must also be considered in its entirety, and the creditor cannot accept the admission and reject any qualification that might make the acknowledgment ineffective." See *Hall v. Barlow*, 260 Md. 327, 272 A. 2d 386 (1971); *Mettee v. Boone*, 251 Md. 332, 247 A. 2d 390 (1968); *Brosius v. City of Hagerstown*, 237 Md. 374, 206 A. 2d 571 (1965).

A careful scrutiny of the record here reveals no evidence which could be said to constitute an acknowledgment under this test. In fact what is gleaned from this examination is that the appellant continually denied any obligation for the 1968 delay and in that light the town's participation in discussions about the claim, no matter with what frequency or intensity, does not constitute "a clear, distinct, and unqualified admission" of any debt. Therefore, it was improper for the court to permit the jury to include in its verdict the amount of $57,516.42 for the 1968 delay.

Allied's request for damages caused by the 1967 delay presents a different problem for the town in sustaining its argument that this claim, like the 1968 delay request, is also barred by limitations. A review of the record discloses that not only was no formal rejection of this demand received by Allied from the contracting officer prior to 4 March 1969, but the only communication which even arguably could be construed as constituting a final written decision of rejection under Clause 6, so as to bar this delay claim because of limitations, is a short statement contained in a letter dated 16 January 1968 where the contracting officer advises the appellee that "[n]o costs for delays are being considered . . . ." This letter, however, fails to comply with the condition precedent provision contained in Clause 6, which requires that a thirty-day grace period be given Allied to further substantiate its previously submitted claim, before the town makes a final acceptance or rejection decision. As the 1967 delay period for which payment is

requested ended on 20 December 1967 and the only letter which might be considered a final rejection, prior to the one sent on 25 February 1969, was dated 16 January 1968, then it is evident that as to this claim the appellant failed to allow Allied the thirty-day grace period required by Clause 6. After this 16 January letter, there were no other indications of a final rejection of the 1967 delay claim by the town's contracting officer until the 25 February 1969 letter was received by Allied on 4 March of that year. Indeed, throughout this approximately thirteen-month interim, not only did Federalsburg discuss various costs with Allied, including those for this particular delay, but the town, in effect, led Allied to believe that this claim was still in the hopper in that its contracting officer was palpably definite when he wanted to reject other charges (witness the 1968 delay claim refusal) yet he never responded with that level of definiteness and clarity in respect to the 1967 delay claim. Thus, it was not until the contracting officer's 25 February 1969 letter was received by Allied on 4 March 1969 that the limitations as to the 1967 delay claim began to run. We come to this conclusion because this letter is tantamount to a final rejection under Clause 6 of any obligation for the expense incurred during the 1967 delay by virtue of the fact that it enclosed a final list of only those items Federalsburg was willing to pay, which list did not include any allowance for the 1967 delay claim.[4] And since, as already pointed out, this suit was instituted within three years of the 4 March date, there exists no limitations bar to the 1967 delay claim.

After limitations, the second argument made by the appellant is that the trial judge committed prejudicial error by commenting on a portion of the evidence in such a way as to indicate to the jury that he believed the contractor's witness. In this regard, Federalsburg points to the remark Judge Turner made, in the hearing of the jury, while ruling on an objection raised during the cross-examination of Allied's president. With emphasis on the words the

---

4. The 25 February 1969 letter did not specifically refer to this 1967 delay claim, but even if this letter did not constitute a final denial in this regard, no one here has suggested that suit for the claim is premature.

appellant deems to be prejudicial, we quote in full the judge's statement:

> "I don't think it's important. This is a matter that certainly can be confusing to the Jury. They're going to decide most of the facts in this case. Mr. Pecora [(Allied's president)] is in court asking for those figures, for those three counts that were shown here on the board, and *certainly, it appeared that he didn't make anything, that he lost money.* I don't think that it is proper or necessary at all to go into what he made on this job. He said he didn't make anything, he lost money."

A discussion of what possible effects this statement could have had on the jury would only involve a worthless debate. Suffice it to say, an objective reading of this ruling, without pulling any specific group of words out of context, will leave one with the clear understanding that all the judge really did was to succinctly restate, in an unbiased manner, the testimony of the witness. In any event, the error, if any, was not of such a magnitude as to require the extreme step of nullifying the entire proceeding by declaring a mistrial, as the appellant sought, when something much less severe would have corrected any faulty impression which may have been conveyed to the jury. But no request for such an instruction was made and, therefore, we cannot say that the trial judge abused his discretion when he denied the appellant's motion that a mistrial be ordered. *Cf. DeMay v. Carper,* 247 Md. 535, 233 A. 2d 765 (1967); *Jacobson v. Julian,* 246 Md. 549, 229 A. 2d 108 (1967); *Bailey v. Wray,* 230 Md. 359, 187 A. 2d 101 (1963).

And finally, in regard to points three and four, although not entirely clear, the appellant seems to be taking exception to the trial judge's instructions given to the jury pursuant to Rule 554 a, b and c, but the record discloses that no objections were made by the appellant to that instruction (Rule 554 d) and they, therefore, may not be raised on appeal (Rule 554 e). In any event, the two questions do not "plainly appear by the record to have been tried and decided by the

lower court," and consequently we will not venture to decide or discuss them further. Rule 885.

> *Judgment of the Circuit Court for Queen Anne's County in the amount of $74,022.66 reduced by $57,516.42 (amount allowed for the 1968 delay) to $16,506.24, and as so reduced it is affirmed.*
>
> *Costs to be paid one-half by the appellant and one-half by the appellee.*